SUPREME COURT OF ARIZONA
In Division

PAUL MORENO,                          )   Arizona Supreme Court
                                      )   No. CV-06-0237-AP/EL
                  Plaintiff/Appellee, )
                                      )   Maricopa County
                     v.               )   Superior Court
                                      )   No. CV 2006-009745
RUSSELL L. JONES,                     )
                                      )
                 Defendant/Appellant, )
                                      )   **O P I N I O N**
                                      )
JAN BREWER, ARIZONA SECRETARY OF      )
STATE; EUGENE FISHER, in his          )
official capacity as a member of      )
the LA PAZ COUNTY BOARD OF            )
SUPERVISORS; CLIFFORD EDEY, in        )
his official capacity as a            )
member of the LA PAZ COUNTY           )
BOARD OF SUPERVISORS; MARY SCOTT,     )
in her official capacity as a         )
member of the LA PAZ COUNTY           )
BOARD OF SUPERVISORS; LEONORE         )
LONORA STUART, in her official        )
capacity as a member of the YUMA      )
COUNTY BOARD OF SUPERVISORS;          )
KATHRYN PROCHASKA, in her             )
official capacity as a member of      )
the YUMA COUNTY BOARD OF              )
SUPERVISORS; MARCO A. REYES, in       )
his official capacity as a            )
member of the YUMA COUNTY BOARD       )
OF SUPERVISORS; GREGORY F.            )
FERGUSON, in his official             )
capacity as a member of the YUMA      )
COUNTY BOARD OF SUPERVISORS;          )
SHELLEY BAKER, in her official        )
capacity as Recorder for LA PAZ       )
COUNTY; SUSAN HIGHTOWER MARLER,       )
in her official capacity as           )
Recorder for YUMA COUNTY,             )
                                      )
                         Defendants.  )
_____)

Appeal from the Superior Court in Maricopa County
The Honorable Kenneth L. Fields, Judge

**REVERSED**

_____

PERKINS COIE BROWN & BAIN PA                                Phoenix
      By    Paul F. Eckstein
            Charles A. Blanchard
            Rhonda L. Barnes
            Patricia A. Alexander
Attorneys for Paul Moreno

TERRI SKLADANY, ACTING ARIZONA ATTORNEY GENERAL        Phoenix
      By    Emma Lehner Mamaluy, Assistant Attorney General
            Peter A. Silverman, Assistant Attorney General
            Diana L. Varela, Assistant Attorney General
Attorneys for Jan Brewer

JON R. SMITH, YUMA COUNTY ATTORNEY                           Yuma
      By    Robert Lee Pickels, Jr., Deputy County Attorney
            William J. Kerekes, Deputy County Attorney
Attorneys for Leonore Lonora Stuart, Kathryn Prochaska, Marco A.
Reyes, Gregory F. Ferguson, and Susan Hightower Marler

WILLIAMS & ASSOCIATES                                  Scottsdale
      By    Scott E. Williams
            Mark Zinman

And

LAW OFFICE OF ROBERT E. MELTON                         Scottsdale
      By    Robert E. Melton
Attorneys for Russell L. Jones

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY             Phoenix
      By    Geraldine L. Roll, Deputy County Attorney
Attorneys for Eugene Fisher, Clifford Edey, Mary A. Scott, and
Shelley Baker

_____

**B A L E S**, Justice

¶1      This case concerns elector Paul Moreno's challenge to

nomination petitions filed by Russell L. Jones, a Republican

candidate for State Senate in Legislative District 24. Jones appealed from a superior court decision finding that he had committed petition forgery, disqualifying him from the primary election ballot, and declaring him ineligible for elected office for five years. The expedited appeal was considered by a division of this court consisting of Chief Justice McGregor, Justice Hurwitz, and Justice Bales. On July 20, 2006, this court issued an order holding that Jones should remain on the ballot and stated that a written opinion would follow. This is that opinion.

## I. Procedural Background

¶2    A person seeking to appear on the ballot for a partisan primary election must submit nomination petitions signed by a sufficient number of qualified electors who either belong to the candidate's party or are not members of another party represented on the ballot. Ariz. Rev. Stat. ("A.R.S.") §§ 16-314, -322 (Supp. 2005). Signatures on nomination petitions must be obtained by circulators who are themselves eligible to register to vote and who appropriately certify their collection of the signatures. A.R.S. § 16-321(D) (Supp. 2005). The circulator, the person "before whom the signatures were written," must verify, among other things, "that each of the names on the petition was signed in his presence on the date indicated . . . ." *Id.* A nomination petition is void if

3

verified by someone other than the person who actually obtained the signatures. *Brousseau v. Fitzgerald*, 138 Ariz. 453, 456, 675 P.2d 713, 716 (1984).

¶3      Jones needed to submit 207 valid signatures.  He filed twenty-nine nomination petitions, containing 315 signatures, with the Arizona Secretary of State, and he personally verified nineteen petitions as their circulator.

¶4      On June 28, 2006, Moreno filed a timely challenge to Jones' petitions pursuant to A.R.S. § 16-351 (Supp. 2005). Moreno argued that Jones should be disqualified from the ballot because some petitions omitted information required by A.R.S. § 16-314(C); certain signatures were invalid; and Jones had verified petitions containing signatures that he had not himself obtained and that this conduct constituted petition forgery. Under A.R.S. § 16-351(F), if a candidate is found guilty of petition forgery, all of the candidate's nominating petitions are disqualified and the candidate is ineligible for elected office for five years.

¶5      At trial on July 3, 2006, Jones testified that seven petitions, which he had verified as the circulator, contained signatures obtained at a town hall meeting in Yuma on April 17, 2006.  Jones said he was present at this event while two adult males (whose names he could not recall) were circulating his nomination petitions, but Jones acknowledged that he had not

4

personally obtained all of the signatures.  Jones also said that, while he was generally aware that people were signing his nomination petitions, he could not see what each person was writing or identify particular signers.

¶6        Moreno called two witnesses who testified that they were each approached at the April 17 town hall by a young high-school-aged woman and asked to sign petitions for Jones.  Neither witness saw Jones in the vicinity.

¶7        With regard to petitions signed other than on April 17, Jones testified that he personally obtained all the signatures on the petitions he verified as the circulator.

¶8        After the July 3 trial, the judge ruled that Jones was not in fact the circulator for certain signatures obtained on April 17.  Consistent with *Brousseau*, the judge held that the seven nominating petitions containing these signatures were void, which invalidated sixty-three signatures.  The trial judge determined, however, that Jones had not committed petition forgery with respect to these petitions, noting that Jones attended the event at which they were circulated.

¶9        Twenty-four signatures (including nine that appeared in the rejected nominating petitions) were found to be invalid because the signer was ineligible or had signed more than once on the same day.  *See* A.R.S. § 16-321(C) (providing that if elector signs more than one petition for the same office and the

signatures are dated on the same date, "all signatures by that elector on that day are deemed invalid"). As a result, Jones was left with 237 valid signatures. On July 5, the trial judge entered judgment for Jones, qualifying him for the 2006 primary election ballot.

¶10 On July 7, Moreno moved to re-open the judgment, Ariz. R. Civ. P. 60(c), and for a new trial, Ariz. R. Civ. P. 59. The motion alleged that Jones had testified falsely that he personally circulated petitions on May 1 and May 2, 2006. In support of this motion, Moreno submitted legislative attendance records showing that Jones (currently a State Representative) was in Phoenix at 1:30 p.m. on May 1 and on May 2. Moreno also submitted a declaration by Barbara Harrison, who stated that she had signed Jones' petition in Yuma on the afternoon of May 1, that the circulator was a woman, and that Harrison did not recall seeing Jones there.

¶11 During a July 11 hearing on Moreno's motion, Harrison testified that one of Jones' female relatives had asked her to sign Jones' petition in Yuma on May 1 between 2 p.m. and 3 p.m. Harrison said she did not see Jones in the room when she signed. The trial judge granted Moreno's motion and held a new trial on July 11 and 12. At this trial, Jones testified that, although he had been in Yuma on the morning of May 1, he then flew to Phoenix for legislative proceedings, and he remained in Phoenix

6

all day on May 2. Jones acknowledged that he could not have obtained any signatures on May 2.

¶12 After the second trial, the judge entered a new decision holding that not only were the seven petitions containing signatures dated April 17 void, but that two other petitions with signatures dated May 1 and May 2 were also void because Jones had verified these petitions when in fact he was in Phoenix when the signatures were obtained in Yuma. The judge further held that Jones, by submitting these petitions to the Secretary of State, had committed petition forgery. The judge disqualified all of Jones' 315 signatures, held Jones ineligible for the primary election ballot, and barred him from seeking elected office for five years pursuant to A.R.S. § 16-351(F).

¶13 Jones filed a timely appeal with this court pursuant to A.R.S. § 16-351(A).

## II. Indispensable Parties

¶14 As a threshold issue, Jones argues that the trial court erred by not dismissing Moreno's lawsuit for failure to name indispensable parties. In a nomination petition challenge, the plaintiff must name as defendants, among others, the board of supervisors of the county responsible for preparing the ballots. A.R.S. § 16-351(C)(3). Moreno, Jones argues, did not name the Yuma County Board of Supervisors and the La Paz County Board of Supervisors as distinct entities. Moreno, however, did

7

name each supervisor in his or her official capacity. This satisfies the statutory requirement. *Cf. Kyle v. Daniels*, 198 Ariz. 304, 9 P.3d 1043 (2000) (ruling on the merits where plaintiff had named supervisors in their official capacities).

### III. Re-opening the Judgment

¶15    Jones also argues that the trial court erred in granting Moreno's motion to re-open the judgment under Rule 60(c)(3). This rule allows a trial judge to re-open a judgment due to "fraud . . . , misrepresentation or other misconduct of an adverse party" if the motion is made "within a reasonable time" and no more than six months from entry of the order or judgment. We review a trial judge's decision to grant a Rule 60(c) motion for an abuse of discretion. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328, 697 P.2d 1073, 1078 (1985).

¶16    Although A.R.S. § 16-351(A) provides short time limits for challenges to nomination petitions, the statute does not categorically preclude the filing of a Rule 60(c) motion. Moreno filed his motion on July 7, just two days after the trial judge entered his initial order denying relief and well within Moreno's five-day deadline under A.R.S. § 16-351(A) to appeal the decision. The trial court's prompt disposition of the motion did not impede this court in deciding the related appeals in advance of the deadlines for preparing the ballot. Even within the constrained time limits of A.R.S. § 16-351(A), we

8

find that Moreno filed his motion "within a reasonable time." Ariz. R. Civ. P. 60(c).

¶17     Jones also argues that the trial court erred in granting Moreno's Rule 60(c) motion because Jones did not substantially impair or interfere with Moreno's ability to present his case.  Instead, Jones argues, Moreno simply failed to timely discover evidence that was available before trial.  We reject this argument.  Although evidence regarding Jones' legislative attendance on May 1 and May 2 was available before the July 3 trial, Moreno did not make his Rule 60(c) motion simply to introduce evidence he had failed to uncover earlier. Moreno instead sought to prove that Jones had made misrepresentations to the court in his July 3 testimony.  The false testimony that Jones had personally obtained all the signatures he verified other than those dated April 17 clearly influenced the trial court's initial ruling.  In these circumstances, the trial judge did not abuse his discretion in re-opening the judgment pursuant to Rule 60(c) or, having done so, in granting a new trial pursuant to Rule 59(b).

## IV. Petition Forgery

¶18     The trial court found that Jones had presented petitions to the Arizona Secretary of State, which he had signed as the circulator, knowing that he had not obtained the signatures in his presence as required by A.R.S. § 16-321(D).

9

This conduct, the trial court further concluded, constituted "petition forgery" within the meaning of A.R.S. § 16-351(F). The latter statute provides that "all petitions that have been submitted by a candidate who is found guilty of petition forgery shall be disqualified and that candidate shall not be eligible to seek election to a public office for a period of not less than five years."  A.R.S. § 16-351(F).

¶19     Jones argues both that there was insufficient evidence to support the trial court's finding that he was not the circulator of the petitions containing signatures dated April 17, May 1, and May 2, and that, even if he did not circulate those petitions, his conduct in verifying them does not constitute petition forgery under A.R.S. § 16-351(F).

¶20     We uphold a trial court's findings of fact unless clearly erroneous as not either "supported by reasonable evidence or based on a reasonable conflict of evidence." *O'Hern v. Bowling*, 109 Ariz. 90, 92-93, 505 P.2d 550, 552-53 (1973).

¶21     The trial court did not clearly err in finding that Jones was not the circulator of petitions containing signatures dated April 17, May 1, and May 2.  At trial, Jones admitted that he personally collected only one of the signatures dated April 17 and did not know who otherwise had signed his petitions that day.  With regard to the May 1 and May 2 signatures, Jones first testified during the July 3 trial that he personally obtained

10

them.  During the second trial, however, Jones admitted that he was in Phoenix for legislative proceedings on the afternoon of May 1 and all day on May 2.  He acknowledged that he could not have collected signatures in Yuma at the same time.

¶22    Substantial evidence also supports the trial court's finding that Jones had presented to the Secretary of State nomination petitions that he had verified as the circulator knowing that he had not obtained the signatures in his presence as required by A.R.S. § 16-321(D).  This statute identifies the circulator as the person "before whom the signatures were written" and requires the circulator to verify that the petitions have been signed in his presence.  Similarly, the petition forms that Jones signed expressly state, immediately before his signature, "that each of the names on the petition were signed in my presence on the date indicated."  Jones could not have been present when petitions were signed in Yuma on the afternoon of May 1 or on May 2, yet he nonetheless submitted petitions that he verified had been signed in his presence on these dates.

¶23    We must next determine whether, as a matter of law, a candidate who falsely verifies a nomination petition as the circulator commits petition forgery under A.R.S. § 16-351(F).  We review issues of statutory interpretation de novo.  *City of*

11

*Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 547 ¶ 8, 105 P.3d 1163, 1166 (2005).

**¶24** "Petition forgery" is not defined in A.R.S. § 16-351(F) or elsewhere in Arizona statutes. Because the term is undefined and subject to more than one reasonable meaning, we must look to other materials to determine the legislature's intent. "To discern the intent the court will examine the policy behind the statute, the evil sought to be remedied, the context, the language, and the historical background of the statute." *Clifton v. DeCillis*, 187 Ariz. 112, 114, 927 P.2d 772, 774 (1996).

**¶25** Jones argues that "petition forgery" should be understood to refer to the conduct proscribed in A.R.S. § 16-1020 (1996), the penal provision of the election laws concerning the improper signing of nomination petitions.[1] Jones argues that he signed his own name and did not violate A.R.S. § 16-1020.

**¶26** Moreno, on the other hand, argues that "petition forgery" occurs if a person violates the Criminal Code's general

---

[1] Under A.R.S. § 16-1020, "[a] person knowingly signing any name other than his own to a nomination petition . . . except in a circumstance where he signs for a person, in the presence of and at the specific request of such person who is incapable of signing his own name because of physical infirmity, or knowingly signing his name more than once to a nomination petition . . . or who is not at the time of signing a qualified elector entitled to vote at the election initiated by the petition, is guilty of a class 1 misdemeanor."

prohibition on forgery in A.R.S. § 13-2002(a)(3) (2001), and that this statute makes it a class four felony for a person, with the intent to defraud, to offer or present "a forged instrument or one that contains false information." *Id*. Moreno argues that Jones "forged" his name as the circulator of petitions actually circulated by others.

**¶27**    Although the issue of statutory interpretation is not clear cut, for several reasons we believe the most plausible reading of A.R.S. § 16-351(F) is that "petition forgery" is meant to refer to the conduct proscribed by A.R.S. § 16-1020, not A.R.S. § 13-2002.  First, we believe that "petition forgery" would ordinarily be understood to refer to falsely signing another's name to a petition or to otherwise fabricating signed petitions.  *See, e.g.*, *Webster's New Third International Dictionary* 891 (1976) (noting that forgery usually refers to "the crime of falsely and with fraudulent intent making or altering a writing or other instrument").  The definition of "forgery" in the Criminal Code is more expansive, embracing not only "forged" instruments (those falsely made, altered, or completed), but also documents merely containing "false information."  *Compare* A.R.S. § 13-2001(8) (Supp. 2005) (defining "forged instrument") *with* A.R.S. § 13-2002 (defining "forgery").

**¶28** Second, to the extent it is necessary to look to other statutes to interpret A.R.S. § 16-351(F), the most logical place to look is in other provisions of the election laws. "If the statutes relate to the same subject or have the same general purpose-that is, statutes which are in pari materia-they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law." *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122, 471 P.2d 731, 734 (1970). Without some indication that the legislature actually intended to define petition forgery pursuant to A.R.S. § 13-2002, we look to other provisions within title 16. Neither A.R.S. § 16-351(F) nor other provisions of the election laws contain any suggestion that "petition forgery" should be defined by reference to the Criminal Code's general forgery provision in A.R.S. § 13-2002.

**¶29** Nor do we find persuasive Moreno's reference to A.R.S. 13-102(D) (2001), which states: "Except as otherwise expressly provided, or unless the context otherwise requires, the provisions of this title shall govern the construction of and punishment for any offense defined outside this title." Section 16-351(F) does not define a "criminal offense," but rather provides a civil penalty (disqualification from the ballot and ineligibility for public office) for certain conduct.

14

¶30    Our conclusion regarding the meaning of the term "petition forgery" also is consistent with the somewhat murky legislative history of A.R.S. § 16-351(F).  This provision was added by the legislature in 1996 as part of general amendments to the election laws.  These amendments, as initially approved by the House of Representatives as House Bill ("H.B.") 2329, did not alter the pre-existing version of A.R.S. § 16-351.

¶31    When H.B. 2329 was considered by the Senate Government Committee, Senator Chesley offered an amendment that would have both amended A.R.S. § 16-1020 and added a new A.R.S. § 16-351(F).  Hearing on H.B. 2329 Before the Senate Comm. on Gov., 42d Leg., 2d Reg. Sess. (Ariz. 1996).  The amendment to A.R.S. § 16-1020 would have labeled the proscribed conduct as "petition forgery" and increased the penalty from a class one misdemeanor to a class four felony.  *Id.*  Senator Chesley's amendment also would have added a new A.R.S. § 16-351(F) with this language:

> ALL PETITIONS THAT HAVE BEEN SUBMITTED BY A CANDIDATE THAT IS FOUND GUILTY OF PETITION FORGERY PURSUANT TO SECTION 16-1020 SHALL BE DISQUALIFIED AND THAT CANDIDATE SHALL NOT BE ELIGIBLE TO SEEK ELECTION TO PUBLIC OFFICE FOR A PERIOD OF NOT LESS THAN TWO YEARS.

Chesley Proposed Amendment, Hearing on H.B. 2329 Before the Senate Comm. on Gov., 42d Leg., 2d Reg. Sess. (Ariz. 1996).

¶32    During the Senate committee discussion of the Chesley amendment, Senator Noland and a research analyst contended that forgery concerning nomination petitions was not subject to

15

prosecution under the general Criminal Code.[2]  Hearing on H.B. 2329 Before the Senate Comm. on Gov., 42d Leg., 2d Reg. Sess. (Ariz. 1996) (statements of Senate Research Analyst Tami Ryall and Arizona State Senator Patricia Noland).  Senator Noland also remarked that it would be difficult to prove criminal charges and that a class four felony could result in severe penalties. *Id.*  After this discussion, the committee approved Senator Noland's motion to delete the language from the Chesley amendment that would have amended A.R.S. § 16-1020 to label the conduct "petition forgery" and to increase the penalty to a class four felony.  *Id.*  The committee, however, approved Senator Chesley's amendment to add the new A.R.S. § 16-351(F). *Id.*

**¶33**     The Senate Rules Committee then proposed an amendment to the proposed A.R.S. § 16-351(F) to delete its reference to

---

[2] Senator Noland and the analyst may have been mistaken in their belief that a defendant must be motivated by pecuniary gain in order to be convicted for forgery under the Criminal Code. *See State v. Thompson*, 194 Ariz. 295, 297 ¶ 15, 981 P.2d 595, 597 (App. 1999) (holding that A.R.S. § 13-2002 does not require proof of intent to cause pecuniary loss).  We need not determine here the precise contours of A.R.S. § 13-2002; the significant point is that because at least one legislator thought "petition forgery" was not subject to prosecution under A.R.S. § 13-2002, it is less likely that the phrase "petition forgery" in § 16-351(F) was meant to refer to conduct violating § 13-2002. Moreover, there is no evidence that *any* legislator contemplated violations of the general forgery statute would trigger the civil penalties under proposed A.R.S. § 16-351(F).

A.R.S. § 16-1020. Senate Comm. on Rules Proposed Amendment, Hearing on H.B. 2329 Before the Senate Comm. on Rules, 42d Leg., 2d Reg. Sess. (Ariz. 1996). This action, however, does not necessarily imply any substantive change in the proposed legislation. Pursuant to legislative rules, the Rules Committee is limited to considering the "constitutionality and proper form and the reasonable germaneness" of the bill and proposed amendments. Senate Rule 7(C)(5) (1995-96). The Rules Committee can propose corrective and technical amendments, but it cannot propose substantive amendments without concurrence from the bill's sponsor. *Id.* at 7(C)(4).

¶**34**     During a Committee of the Whole proceeding, the Rules Committee amendment was withdrawn and Senator Chesley proposed a floor amendment, to substitute for the Senate Government Committee amendment, that omitted the reference in proposed A.R.S. § 16-351(F) to A.R.S. § 16-1020. Bill Status Overview for H.B. 2329, 42d Leg., 2d Reg. Sess. (Ariz. 1996). The pertinent language of Senator Chesley's floor amendment is as follows:

> IN ADDITION TO THE PROCEDURES SET FORTH IN THIS SECTION, ALL PETITIONS THAT HAVE BEEN SUBMITTED BY A CANDIDATE THAT IS FOUND GUILTY OF PETITION FORGERY SHALL BE DISQUALIFIED AND THAT CANDIDATE SHALL NOT BE ELIGIBLE TO SEEK ELECTION TO A PUBLIC OFFICE FOR A PERIOD OF NOT LESS THAN TWO YEARS.

17

Chesley Proposed Floor Amendment #2, Hearing on H.B. 2329 Before the Senate Comm. of the Whole, 42d Leg., 2d Reg. Sess. (Ariz. 1996).

¶35　　Senator Hartley then proposed amending this language to increase the disqualification period from two to five years. Hartley Proposed Floor Amendment to Chesley Proposed Floor Amendment #2, Hearing on H.B. 2329 Before the Senate Comm. of the Whole, 42d Leg., 2d Reg. Sess. (Ariz. 1996). The Senate adopted Senator Chesley's floor amendment as amended by Senator Hartley. Bill Status Overview for H.B. 2329, 42d Leg., 2d Reg. Sess. (Ariz. 1996). The House of Representatives concurred with the amended bill without substantive comment. H.B. 2329, as amended by the Senate, enacted the language currently found in A.R.S. § 16-351(F).

¶36　　The legislative history, in summary, shows that Senator Chesley initially proposed both to increase the penalty for any person's violating A.R.S. § 16-1020 to a class four felony and to add a new § 16-351(F) providing that a *candidate* found guilty of violating § 16-1020 would also have all petitions disqualified and would be ineligible for elected office for two years. The Legislature ultimately determined not to increase the penalty for violating A.R.S. § 16-1020 to a class four felony, to preserve the reference to "petition forgery" in A.R.S. § 16-351(F) but to delete the phrase

18

"pursuant to A.R.S. § 16-1020," and to increase the disqualification from elected office to five years for candidates found guilty of petition forgery. There is no indication that any legislator contemplated that the proposed legislation would also expand the sanctions when a person improperly verifies nomination petitions circulated by others – conduct that, although not reached by A.R.S. § 16-1020, results in the voiding of the petitions under this court's 1984 decision in *Brousseau*.

¶37 We do not believe that this history suggests that the Legislature intended the disqualification in A.R.S. § 16-351(F) to be triggered by forgery under the general Criminal Code provision (which is a class four felony) rather than by a violation of A.R.S. § 16-1020. Senator Chesley introduced his amendment to increase the penalty for violating A.R.S. § 16-1020 to a felony and to add additional sanctions for candidates who violated this statute. This background suggests that the Legislature thought that the conduct subject to A.R.S. § 16-1020 coincided with "petition forgery" for purposes of A.R.S. § 16-351(F). The latter statute, as enacted, does omit the phrase "pursuant to A.R.S. § 16-1020" after the words "found guilty of petition forgery." This change, however, most likely reflects a desire to avoid suggesting that the finding that a candidate is guilty of petition forgery must occur through a criminal

conviction under A.R.S. § 16-1020. Requiring a conviction to trigger A.R.S. § 16-351(F) would largely render ineffective the statute's provision disqualifying all of a candidate's submitted petitions, as a criminal conviction rarely could be obtained before the relevant election occurs.

¶38    We hold that petition forgery under A.R.S. § 16-351(F) refers to conduct violating A.R.S. § 16-1020. Although Jones improperly signed his name to the petitions of April 17, May 1, and May 2 as the circulator, and certainly misled the court in his July 3 testimony, his conduct did not violate A.R.S. § 16-1020. The trial court thus erred in finding Jones guilty of petition forgery.[3]

## V. The Validity of Petition 20

¶39    Given our conclusion that Jones did not commit petition forgery, whether he qualifies for the ballot turns on the validity of petition 20. This petition was circulated by someone other than Jones and contains fourteen signatures. Apart from these signatures, Jones submitted 202 signatures that

---

[3] Our decision concerning the scope of "petition forgery" under A.R.S. § 16-351(F) does not, of course, express any view whether a candidate's false verification of a nominating petition or related false testimony might merit prosecution under A.R.S. § 13-2002 (forgery), A.R.S. § 13-2702 (2001) (perjury), or other criminal provisions.

20

have not been successfully challenged, and he needs at least 207 signatures to qualify for the ballot.[4]

**¶40** In his cross-appeal, Moreno argues that the trial court erred in not disqualifying the signatures on petition 20 because the petition form, by omitting the specific date of the primary election, failed to substantially comply with the requirements of A.R.S. § 16-314(C). Whether a petition form substantially complies with the statutory requirements is a "pure question of law" that we review de novo. *See Clifton*, 187 Ariz. at 113, 927 P.2d at 773 (reviewing sufficiency of petitions for "nomination other than by primary" pursuant to A.R.S. § 16-341 (1996)).

**¶41** The form of nomination petitions is addressed in A.R.S. § 16-314(C). Nomination petitions must include, in language substantially in the form of the statute, certain information, including the elector's county and party registration, the candidate's name and address, the office in question, and when the election is "to be held." Here, petition 20 states that it concerns "the primary election to be held

---

[4] As noted above, Jones submitted 315 signatures to the Secretary of State. Eighty-three of these signatures are invalid under *Brousseau* because they appear on petitions that Jones improperly signed as the circulator (sixty-three on the seven petitions containing signatures dated April 17 and another twenty on two petitions containing signatures dated May 1 or May 2). Another fifteen signatures are invalid because they are from ineligible signers or persons who signed twice on the same day.

_____, 2006" without specifying the day or month of the election.[5]

¶42    In determining whether a nomination petition form substantially complies with the statutory requirements, this court has focused on whether the omission of information could confuse or mislead electors signing the petition. *See Marsh v. Haws*, 111 Ariz. 139, 140, 526 P.2d 161, 162 (1974). Because "the statute allows a measure of inconsistency by only requiring substantial compliance," *Clifton*, 187 Ariz. at 116, 927 P.2d at 776, "no mere irregularity can be considered, unless it be shown that the result has been affected by such irregularity," *id.* (quoting *Territory ex rel. Sherman v. Bd. of Supervisors*, 2 Ariz. 248, 253, 12 P. 730, 732 (1887)).

¶43    *Marsh* illustrates the standard for determining substantial compliance. In that case, two candidates had noted on their petitions that they were running for justice of the peace but had failed to identify the particular precinct. 111

---

[5] With regard to nominations for partisan primary elections or for non-partisan elections, A.R.S. § 16-314(C) (Supp. 2005) directs, among other things, that the petitions shall include language substantially stating "the primary election to be held _____." In contrast, the statute governing nominations for partisan elections other than by primary, A.R.S. § 16-341(D), states that such petitions shall include language substantially stating "election to be held on the _____ day of _____, _____." We need not decide here whether the omission of any date whatsoever would invalidate nominating petitions governed by A.R.S. § 16-314(C) or whether the inclusion of only the year of the election would substantially comply with A.R.S. § 16-341(D).

22

Ariz. at 140, 526 P.2d at 162. The justice court precinct boundaries did not coincide with voter registration precincts. *Id.* Given this fact, this court concluded that the petitions did not substantially comply with the statutory requirements because there was a potential for voter confusion. *Id.* A voter signing a petition "would [not] automatically know that he was nominating a candidate for the office of 'Justice of the Peace'" of any particular precinct. *Id.*

¶44 Here, we do not believe that petition 20, by omitting the particular day and month of the 2006 primary, created a significant danger that electors would be confused or misled. Moreno, citing A.R.S. § 16-204(B) (Supp. 2005), notes that under Arizona election laws, governmental entities could hold primary elections on four different dates in 2006. This statute, however, concerns elections for certain *local* offices. Petition 20 specifies that Jones is seeking nomination to run for the Arizona State Senate. There is only one primary election for state legislative office – the eighth Tuesday prior to the general election for state office, A.R.S. § 16-201 (1996), which is held on the first Tuesday after the first Monday in November, A.R.S. § 16-211 (1996).

¶45 In contrast to *Marsh*, electors would "automatically know" for which primary election they were signing because the petition specified the year and there is only one primary that

23

year for state legislative office. Thus, the 2006 primary election date provided on petition 20 is in substantial compliance. *Cf. Adams v. Bolin*, 77 Ariz. 316, 322, 271 P.2d 472, 476 (1954) (putting the phrases "hereinafter designated" and "the precinct *designated* or *indicated* by my address" in the blank provided to indicate the relevant precinct was legally sufficient to identify elector's precinct).

## VI. Conclusion

¶46    Because we determine that improperly verifying petitions that others actually circulated is not petition forgery, and because Jones otherwise obtained a sufficient number of signatures to appear on the primary election ballot, we reverse the trial court's judgment in favor of Moreno and vacate the trial court's order enjoining the public defendants from placing Jones' name on the primary election ballot. We remand with instructions to enter judgment in favor of Jones.

¶47    Although we have resolved this case in Jones' favor, our decision is not intended to diminish the importance of the integrity of the nomination process. By requiring the circulator to verify the petitions, "[t]he legislature has sought to protect the process by providing for some safeguards in the way nomination signatures are obtained and verified." *Brousseau*, 138 Ariz. at 455, 675 P.2d at 715. Falsely certifying a petition is a "serious matter involving more than a

24

technicality." *Id.* Accordingly, we recognized in *Brousseau* that petitions that are improperly certified are void. It is for the legislature to consider, however, whether additional sanctions – such as automatic disqualification from the election in question or the five-year disqualification under A.R.S. § 16-351(F) – are appropriate when a candidate falsely affirms that he is the circulator of petitions actually circulated by others. We conclude today only that the current version of A.R.S. § 16-351(F) does not so provide.

_____
W. Scott Bales, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Andrew D. Hurwitz, Justice

25