IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

JOSHUA STANWITZ, AN INDIVIDUAL; ANDREW CLARK, AN INDIVIDUAL; SCOT MUSSI, AN INDIVIDUAL; AND ROY MILLER, AN INDIVIDUAL,
*Petitioners/Appellees/Cross-Appellants,*

*v.*

MICHELE REAGAN, IN HER CAPACITY AS THE SECRETARY OF STATE,
*Respondent/Appellee,*

*and*

OUTLAW DIRTY MONEY, A POLITICAL COMMITTEE,
*Real Party in Interest/Appellant/Cross-Appellee.*

TERRY GODDARD, A CITIZEN AND QUALIFIED ELECTOR OF THE STATE OF ARIZONA; PAUL JOHNSON, A CITIZEN AND QUALIFIED ELECTOR OF THE STATE OF ARIZONA; AND GRANT WOODS, A CITIZEN AND QUALIFIED ELECTOR OF THE STATE OF ARIZONA; AND OUTLAW DIRTY MONEY, A POLITICAL COMMITTEE,
*Petitioners/Appellants,*

*v.*

MICHELE REAGAN, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF STATE,
*Respondent/Appellee,*

*and*

J.D. MESNARD, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE ARIZONA HOUSE OF REPRESENTATIVES; AND STEVE YARBROUGH, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE ARIZONA SENATE,
*Intervenors/Appellees.*

No. CV-18-0222-AP/EL
Filed November 21, 2018
Amended November 27, 2018

STANWITZ v. REAGAN
Opinion of the Court

Appeal from the Superior Court in Maricopa County
The Honorable Teresa A. Sanders, Judge
Nos.  CV2018-009789, CV2018-010420 (Consolidated)
**AFFIRMED**
—————————

COUNSEL:

Kory Langhofer, Thomas Basile, Stewart Salwin, Statecraft PLLC, Phoenix, Attorneys for Joshua Stanwitz, Andrew Clark, Scot Mussi, Roy Miller, J. D. Mesnard, and Steve Yarbrough

Kimberly A. Demarchi, Joshua D. Bendor, Emma Cone-Roddy, Osborn Maledon, P.A., Phoenix, Attorneys for Terry Goddard, Paul Johnson, Grant Woods, and Outlaw Dirty Money

Mark Brnovich, Arizona Attorney General, Kara M. Karlson, Joseph E. La Rue, Assistant Attorneys General, Phoenix, Attorneys for Michele Reagan

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Phoenix, Attorneys for Amicus Curiae State of Arizona

Israel G. Torres, James E. Barton, II, Saman J. Golestan, Torres Law Group, PLLC, Tempe, Attorneys for Amicus Curiae Clean Energy for a Healthy Arizona
—————————

JUSTICE LOPEZ authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE BRUTINEL, and JUSTICES PELANDER, TIMMER, BOLICK, and GOULD joined.

—————————

JUSTICE LOPEZ, opinion of the Court:

¶1        We explain today the reasons for our prior decision order disqualifying the "Stop Political Dirty Money Amendment" from the November 2018 general election ballot.  We honor the constitutional origins of our citizens' right to amend the Arizona Constitution and to enact legislation through the initiative process, and we are reluctant to impede such civic efforts.   However, we must also enforce valid statutory

2

requirements that permissibly regulate the initiative process. We hold that A.R.S. § 19-118(C) is constitutional, both facially and as applied here, because its requirement that registered petition circulators subpoenaed in an election challenge appear for trial "does not unreasonably hinder or restrict" the initiative process and it "reasonably supplements the constitutional purpose" by fostering the integrity of the process. *Direct Sellers Ass'n v. McBrayer*, 109 Ariz. 3, 5 (1972).

I.

¶2        The right to initiate constitutional amendments and propose statutes was retained by the people when delegating legislative authority to the Arizona legislature. Ariz. Const. art. 4, pt. 1, § 1(1)–(2). To exercise this right, a sufficient number of qualified electors must sign verified petitions in support of the proposed measure and submit them as prescribed by law. *See* A.R.S. tit. 19 ch. 1 (setting forth the specific process by which such petitions are to be submitted and processed). Constitutional initiatives require signatures from 15% of all qualified electors. Ariz. Const. art. 4, pt. 1, § 1(2). For a statewide initiative, the Arizona Secretary of State (the "Secretary") is required to review the submitted petitions, remove petition sheets and individual signatures on petition sheets that fail to comply with statutory requirements, and count the remaining signatures on the petition sheets. A.R.S. § 19-121.01(A). If, after satisfying other Title 19 requirements not contested here, the Secretary determines that the initiative is supported by the requisite number of valid signatures, the measure is placed on the ballot. A.R.S. §§ 19-121.04(B), -125.

¶3        On July 5, 2018, the Outlaw Dirty Money political committee (the "Committee") filed signature petitions with the Secretary to qualify initiative C-03-2018, otherwise known as the "Stop Political Dirty Money Amendment" (the "Initiative"), for the November 2018 ballot. The Initiative's purpose is to amend the Arizona Constitution to ensure public knowledge of the original source of campaign contributions. The Committee was required to gather 225,963 valid signatures to qualify the Initiative for the ballot. The Committee's signature count exceeded the minimum required.

¶4        On July 19, the tenth business day after the Committee filed its petitions, the Stanwitz Petitioners ("Petitioners") filed a complaint pursuant to § 19-118(D) challenging the validity of certain petitions based

on various objections to petition circulators, including that their registrations were defective, they were ineligible to circulate petitions, and they were improperly paid based upon the number of signatures gathered.

¶5        On August 2, the Secretary completed her preliminary review of the petitions pursuant to § 19-121.01, and determined that 263,000 signatures remained to be verified pursuant to additional statutory procedures.  On August 7, the Committee filed a complaint pursuant to A.R.S. § 19-122(A) claiming the Secretary erroneously removed certain petition sheets and signatures during her review.  The trial court consolidated the actions.

¶6        On August 9, prior to trial, Petitioners notified the Committee's counsel and the trial court that they intended to subpoena approximately twenty of the Committee's petition circulators to testify concerning their statutory qualifications to gather signatures.  Counsel for the Committee requested additional time to prepare for the evidentiary hearing in light of the subpoenaed witnesses, which the court granted.  The next day, Petitioners issued subpoenas to fifteen circulators, approximately 0.6% of the Committee's circulators, requiring their appearance at the August 20 evidentiary hearing.

¶7        On August 10 and 13, Petitioners served the Committee's circulators.  Petitioners provided counsel for the Committee with copies of the subpoenas on August 10 and informed counsel that they had served, or were in the process of serving, the circulators.  Fourteen of the circulators listed as their statutory address, for purposes of service of process pursuant to § 19-118(B)(2), the same location—a ninth-floor suite in a multi-tenant Phoenix commercial office building rented by the petition circulation company hired by the Committee.[1]  Because there was a guard stationed at the first-floor entrance to the building, Petitioners served the subpoenas on the guard, who signed the service of process form and wrote that he was "authorized to receive and accept service of process."

¶8        None of the fifteen subpoenaed circulators appeared at the August 20 evidentiary hearing or otherwise responded to Petitioners'

---

[1] One circulator provided a different address with no suite or room number and the Committee does not challenge the validity of service at that address under § 19-118(B)(2).

subpoenas. Petitioners moved the trial court to disqualify the non-appearing circulators' petitions containing 8824 signatures. In response, the Committee challenged the constitutionality of three statutes: A.R.S. § 19-102.01(A), which requires strict construction of, and compliance with, constitutional and statutory requirements for statewide initiative measures; § 19-122(A), which governs the Secretary's duties to accept and file a petition for an initiative or referendum; and § 19-118(C), which invalidates any petition signatures obtained by a registered circulator properly served with a subpoena who fails to appear for trial.

¶9 On August 22, the day before the trial court filed its ruling, the Secretary issued the results of her final review, which included county recorders' verifications of random signature samples pursuant to A.R.S. § 19-121.02(A)-(B). The Secretary determined, pursuant to A.R.S. § 19-121.04(A), that "the estimated total number of valid signatures is 223,892, which is less than the 225,963 minimum signatures required to qualify for the ballot under the Arizona Constitution." The Secretary concluded that, pending the outcome of legal challenges in the trial court, "[the Initiative] has not submitted a sufficient number of signatures for placement on the November 6, 2018 ballot."

¶10 On August 23, the trial court filed its ruling, in relevant part, upholding the constitutionality of § 19-102.01(A) (the strict compliance provision), finding that the statute "reasonably supplements" and does "not unreasonably hinder or restrict" the Constitution; upholding the constitutionality of § 19-118(C) (the circulator subpoena provision), "both on its face and as applied to the facts of this case," because it "reasonably supplements and does not unreasonably hinder[] the Committee's constitutional right of initiative"; and voiding the petition sheets containing 8824 signatures produced by the fifteen circulators who failed to appear pursuant to Petitioners' subpoenas. The trial court's ruling rendered the Initiative ineligible for the November 2018 ballot.

¶11 The Committee and Petitioners filed expedited appeals in this Court pursuant to A.R.S. § 19-122(A). The Committee challenges the constitutionality of §§ 19-102.01(A) and 19-118(C), and the trial court's decision to disqualify the non-appearing subpoenaed circulators' petition signatures. Because the parties agree that the validity of the signatures gathered by the non-appearing circulators is dispositive as to whether the

Initiative qualified for inclusion on the November 2018 ballot, we do not consider Petitioners' appeal.

## II.

**¶12**     As our decision does not turn on whether the Committee strictly complied with § 19-118(C), we need not determine the constitutionality of the strict compliance requirement of § 19-102.01(A). *See, e.g.*, *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 273 (1994) (noting that, if possible, "we construe statutes to avoid unnecessary resolution of constitutional issues").     Consequently, the only issues we must decide are the constitutionality of § 19-118(C) and the propriety of the trial court's exclusion of the non-appearing subpoenaed circulators' petition signatures. We have jurisdiction over this matter pursuant to article 6, § 5(3) of the Arizona Constitution and § 19-122(C).

## III.

**¶13**     We will not disturb a trial court's findings of fact unless they are "clearly erroneous as not either supported by reasonable evidence or based on a reasonable conflict of evidence." *Moreno v. Jones*, 213 Ariz. 94, 98 ¶ 20 (2006) (internal quotation marks omitted). We review de novo as a question of law whether an initiative violates a constitutional or statutory requirement. *League of Ariz. Cities & Towns v. Brewer*, 213 Ariz. 557, 559 ¶ 7 (2006). We review the constitutionality of a statute de novo, "construing it, if possible, to uphold its constitutionality." *State v. Hulsey*, 243 Ariz. 367, 385 ¶ 67 (2018); *see Pedersen v. Bennett*, 230 Ariz. 556, 558 ¶ 6 (2012).

**¶14**     As noted above, the Arizona Constitution authorizes the state's qualified electors to propose and enact laws by initiative. Ariz. Const. art. 4, pt. 1, § 1(1)–(2). This authority, however, is subject to reasonable regulation. *Id.* § 1(14) (the initiative power "shall not be construed to deprive the legislature of the right to enact any measure except that the legislature shall not have the power to adopt any measure that supersedes" an enacted initiative). "Further, article 7, section 12 directs the legislature to enact 'registration and other laws to secure the purity of elections and guard against abuses of the elective franchise.'" *Molera v. Invest In Ed. Comm.*, ___ Ariz. ___, 428 P.3d 490, 493 ¶ 10 (2018) (quoting Ariz. Const. art. 7, § 12). A statute regulating a provision of our constitution is permissible if it "does not unreasonably hinder or restrict the

constitutional provision and if the [statute] reasonably supplements the constitutional purpose" of the provision. *Direct Sellers*, 109 Ariz. at 5.

**¶15** Section 19-118(A) provides that "[a]ll circulators who are not residents of this state and, for statewide ballot measures only, all paid circulators must register as circulators with the secretary of state before circulating petitions pursuant to this title." Section 19-118(B)(1) requires that the circulator consent to the jurisdiction of Arizona courts "in resolving any disputes concerning the circulation of petitions by that circulator," and § 19-118(B)(2) mandates that the circulator designate an Arizona address "at which the circulator will accept service of process related to disputes concerning circulation of that circulator's petitions." "Service of process is effected under this section by delivering a copy of the subpoena to that person individually or by leaving a copy of the subpoena at the address designated by the circulator with a person of suitable age." § 19-118(B)(2). Thus, § 19-118, which requires certain circulators to register before gathering signatures for ballot measures and creates a cause of action to challenge the eligibility of petition circulators, is an exercise of legislative authority to regulate the ballot measure process. *Cf. W. Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 429–31 (1991) (holding referendum petitions invalid because they did not comply with constitutional and statutory requirements for circulators' statements); *Direct Sellers*, 109 Ariz. at 5 (holding that "the requirement that circulators of referendum petitions be qualified electors is a valid exercise of legislative power").

## IV.

**¶16** Section 19-118(C), the statutory provision the Committee challenges here, sets forth registered petition circulators' obligations to respond to a subpoena and the penalty for non-compliance:

> If a registered circulator is properly served with a subpoena to provide evidence in an action regarding circulation of petitions and fails to appear or produce documents as provided for in the subpoena, all signatures collected by that circulator are deemed invalid.

7

A.

**¶17** The Committee argues that § 19-118(C) is facially unconstitutional as it fails to pass muster under *Direct Sellers* because it unduly hinders and restricts the legislative authority of the people through the initiative process and fails to reasonably supplement the purpose of the initiative process. Specifically, the Committee contends that the statute impedes the initiative process because it improperly disqualifies otherwise valid signatures merely because a circulator fails to appear when subpoenaed to testify as to a petition challenge. We disagree.

**¶18** To provide context for the Committee's constitutional challenge, we note that the Arizona Constitution specifically envisions a signature verification requirement, Ariz. Const. art. 4, pt. 1, § 1(9), and this Court has observed that "[t]he circulator is the only person in the process who is required to make a sworn statement and is, therefore, the person under the greatest compulsion to lend credibility to the process." *W. Devcor*, 168 Ariz. at 432. Consequently, because the integrity of the signature collection process is singularly dependent on the probity of circulators, "statutory circulation procedures" are critical "to reduce the number of erroneous signatures, guard against misrepresentations, and confirm that signatures were obtained according to law." *Brousseau v. Fitzgerald*, 138 Ariz. 453, 456 (1984) (discussing candidate nominating petitions); *cf. Arrett v. Bower*, 237 Ariz. 74, 79 ¶ 17 (App. 2015) (concluding that a petition serial number requirement was "critical" to ensuring the integrity of the referendum process).

**¶19** "To succeed on a facial challenge, . . . 'the challenger must establish that no set of circumstances exists under which the [statute] would be valid. The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid.'" *State v. Wein*, 244 Ariz. 22, 31 ¶ 34 (2018) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), *petition for cert. docketed*, No. 18-391 (U.S. Sept. 27, 2018). "[T]he State need not narrowly tailor the means it chooses to promote ballot integrity," including deterrence of fraud. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 365 (1997). As noted, *supra* ¶ 14, a statute regulating a provision of the Arizona Constitution is permissible if it "does not unreasonably hinder or restrict the constitutional provision and if the [statute] reasonably supplements the constitutional purpose" of the provision. *Direct Sellers*, 109 Ariz. at 5.

¶20 The Committee's facial challenge fails for two reasons. First, the Committee does not contend that § 19-118(C)'s disqualification remedy is invalid in all circumstances. On the contrary, the Committee observes that "requiring the circulators to register and provide information to facilitate calling them as witnesses in any proceeding involving their petitions could arguably protect the integrity of the initiative process" when there is a "valid objection" or a "need for the circulator's testimony." The Committee's implicit concession refutes its facial constitutional challenge because it expressly contemplates a constitutional application of the statute. Second, contrary to the Committee's argument, the challenged provision reasonably supplements the initiative process by deterring fraud.

¶21 We agree with the trial court that the statute "represents a reasonable means of fostering transparency, facilitating the judicial fact-finding process, inducing compliance with valid compulsory process, and mitigating the threat of fraud or other wrongdoing infecting the petition process." Thus, § 19-118(C) is constitutionally valid on its face because it furthers the constitutional purpose of the initiative process by ensuring the integrity of signature gathering by reasonable means, and the Committee fails to demonstrate that there is "no set of circumstances" under which the statute's application would be valid.

B.

¶22 The Committee's principal argument, then, is that § 19-118(C) is unconstitutional as applied in this case because the circulators' testimony was not factually or legally necessary to determine the validity of their petition signatures and Petitioners' issuance of subpoenas was unduly burdensome. More pointedly, the Committee contends that Petitioners "had no intention of actually relying on testimony by [the subpoenaed circulators]" because their testimony was unnecessary or irrelevant to Petitioners' challenges to the circulators' statutory qualifications. We are unpersuaded.

¶23 Petitioners raised serious allegations concerning the circulators' statutory qualifications to collect signatures. Despite the Committee's assertion that the circulators' testimony was unnecessary for

9

the trial court to evaluate Petitioners' challenges, the court, in its discretion, reached the opposite conclusion. In fact, the trial court found that

> the [s]ubpoenaed circulators' failure to appear, or to otherwise respond to the subpoenas, materially prejudiced the fact-finding process, particularly with respect to questions relating to (1) the manner in which circulators were compensated, to include whether or to what extent signature quotas or other productivity factors affected circulators' compensation or employment status; (2) the existence and nature of felony convictions; and (3) alleged defects in the circulators' registration forms and petition affidavits.

On this record, we find no basis to disturb the trial court's findings concerning the merits of Petitioners' asserted need for testimony to support their challenges to the subpoenaed circulators' qualifications. *See Moreno*, 213 Ariz. at 98 ¶ 20.

**¶24** Further, the Committee's suggestion that it was unduly burdened by Petitioners' subpoenas to circulators is unpersuasive. Petitioners subpoenaed only fifteen circulators to testify—fewer than one percent (0.6%) of the Committee's petition circulators—and the Committee received notice of the subpoenas eleven days before the evidentiary hearing. Section 19-118(C)'s application here demonstrates, rather than refutes, the constitutional application of the statute's disqualification remedy.[2]

---

[2] The Committee, citing *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 195–96 ¶¶ 37-40 (1999), asserts in a footnote that "[t]o the extent that A.R.S. § 19-118(C) also precludes the court from making factual findings regarding the eligibility or lawful registration of circulators based on evidence before it, it raises separation of powers concerns." We decline to consider the Committee's passing reference to "separation of powers concerns." *See, e.g.*, *AMERCO v. Shoen*, 184 Ariz. 150, 154 n.4 (App. 1995) (declining to consider a "cursory parenthetical assertion" as sufficient to frame an issue for review).

C.

¶25        The Committee next argues that, even if § 19-118(C) is constitutional, the trial court erred in refusing to quash the subpoenas because Petitioners failed to comply with the statute's valid service requirement and Arizona Rule of Civil Procedure 45's service and timeliness provisions.  We disagree.

¶26        "Service of process is effected under [§ 19-118] by delivering a copy of the subpoena to that person individually or by leaving a copy of the subpoena at the address designated by the circulator with a person of suitable age."  § 19-118(B)(2); *see also* Ariz. R. Civ. P. 4.1(d)(1)-(3) (service is proper if an individual is served personally, if a copy of the served document is left at their dwelling or usual place of abode with a person of suitable age, or if service is performed on an authorized agent).  For purposes of service of process, an authorized agent is a person who has actual authority to accept service or who has apparent authority to do so based on the principal's actions.  *Kline v. Kline*, 221 Ariz. 564, 570 ¶ 20 (App. 2009).

¶27        The Committee contends that Petitioners' service was defective under § 19-118(B)(2) because they served fourteen subpoenas on a guard stationed on the first floor of the multi-story office building rather than at the circulators' listed ninth-floor suite at the same address.  This contention is unconvincing.  The Committee, through its contracted petition-circulation company, chose this location as the circulators' statutory service address.  Petitioners effected service at this facility as they were permitted—with the guard on the first floor of the circulators' building who signed the service of process form and avowed in writing that he was "authorized to receive and accept service of process" for the building's tenants.  Petitioners reasonably served the building's guard as the circulators' authorized agent for service purposes.  We see no reason to disturb the trial court's finding of proper service.  *See Moreno*, 213 Ariz. at 98 ¶ 20.  Further, accepting the Committee's argument that Petitioners failed to satisfy the statute's service requirement on these facts would incentivize evasion of service because it would encourage a circulator to register a statutory service address beyond the reach of a process server, thus undermining the enforceability and fraud deterrence purpose of § 19-118(C).

**¶28** The Committee's argument that Petitioners failed to comply with the Rule 45 requirements to provide proof of service of the subpoenas, Ariz. R. Civ. P. 45(d)(3), and to do so within a "reasonable time to comply," Ariz. R. Civ. P. 45(e)(2)(A)(i), is also unavailing. On August 10, 2018, Petitioners provided written notice to the Committee of the fifteen subpoenas, including the circulators' names and service-of-process addresses, and that the circulators were being served. At the August 20 evidentiary hearing, after Petitioners moved to disqualify the non-appearing circulators, the Committee suggested for the first time that Petitioners' service was defective. But the Committee knew of the subpoenas at the initial hearing in the case, the subpoenas were issued and served ten days before the evidentiary hearing, and the Committee was promptly served with copies of the affidavits of service. Because the record belies the Committee's claim of inadequate notice and unfair delay, we affirm the trial court's ruling that the Committee failed to articulate any prejudice arising from the alleged Rule 45 violations.

V.

**¶29** The Committee recounts its extraordinary efforts in circulating petitions and gathering signatures over seven months to propose a constitutional amendment to enhance transparency concerning the source of campaign contributions. We do not discount the civic activism or the resources devoted to this campaign. But the right of the people to exercise the legislative prerogative is, and must be, subject to reasonable regulation of the initiative process. Because § 19-118 fosters the integrity of the initiative process and does so by reasonable means, we hold that § 19-118(C)'s disqualification provision is constitutional on its face and as applied here.

**¶30** For the reasons stated, we affirm the trial court's judgment disqualifying the Initiative from the November 2018 ballot.