264 P.3d 34

ARIZONA DEPARTMENT OF
ECONOMIC SECURITY,
Petitioner,

v.

The Honorable Raymond LEE, Judge of
the Superior Court of the State of Ari-
zona, in and for the COUNTY OF MAR-
ICOPA, Respondent Judge,

Kimberly J., Shawn T., Skye J.,
Real Parties in Interest.

No. 1 CA–SA 11–0146.

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 8, 2011.

Thomas C. Horne, Attorney General By Michelle R. Nimmo, Assistant Attorney General, Phoenix, Attorneys for Petitioner Arizona Department of Economic Security.

Marty Lieberman, Legal Defender By Jason B. Van Doren, Deputy Legal Defender, Phoenix, Attorneys for Real Party in Interest Kimberly J.

**AMENDED OPINION**

OROZCO, Judge.

¶ 1 The Arizona Department of Economic Security (ADES) petitioned this court for special action relief challenging the juvenile court's order mandating ADES's return of Skye J. (the Child) to the custody of her biological mother, Kimberly J. (Mother). We are asked to determine whether the juvenile court erred when it ordered the Child's release from temporary custody without hearing evidence concerning the Child's health and safety, after it concluded ADES had failed to perform a custody review pursuant to Arizona Revised Statutes (A.R.S.) section 8–822.3 (Supp.2010) (822 review). This question presents a matter of statewide importance that could otherwise evade appellate review prior to the Child's return to Mother. In the exercise of our discretion, therefore, we accept special action jurisdiction and grant relief consistent with this opinion. *See Vo v. Superior Court,* 172 Ariz. 195, 198, 836 P.2d 408, 411 (App.1992) ("where an issue is one of first impression of a purely legal question, is of statewide importance, and is likely to arise again, special action jurisdiction may be warranted"); Ariz. R.P. Spec.

Act. 1(a) (special action is "available where there is [no] equally plain, speedy, and adequate remedy by appeal"); A.R.S. § 12–120.21.A.4 (2003).

**FACTS AND PROCEDURAL HISTORY**

¶ 2 ADES filed a dependency petition on May 6, 2011 alleging that Mother was unable to parent due to neglect, substance abuse, and mental health issues. On the same day, the juvenile court granted a motion for pickup of the Child based on ADES's assertion that the "child is at imminent risk of abuse and/or neglect due to Mother's substance abuse." The juvenile court also made the Child a temporary ward of the court, granting physical custody to ADES. ADES removed the Child from Mother's custody on or about May 13, 2011. It was not until four days later, on May 17, 2011, that ADES conducted an 822 review.

¶ 3 Also on May 17, 2011, the juvenile court held a hearing pursuant to A.R.S. § 8–824 (Supp.2010) (824 hearing) ordering that the Child remain a temporary ward of the court and in the physical custody of ADES. At that hearing, Mother did not contest Child's placement into temporary custody.

¶ 4 Mother subsequently filed a motion for return of the Child on the ground that ADES had failed to conduct an 822 review before removing the Child. After oral argument was held on May 25, 2011, the juvenile court ordered ADES to return the Child to Mother by the next day; however, the court stayed its order for one week to allow ADES "to take appropriate appellate action." ADES, however, failed to seek appellate review in the days immediately following the order.

¶ 5 After a week had passed, on June 2, 2011, the juvenile court held an order-to-show-cause hearing regarding ADES's failure to comply with the order requiring it to return the Child to Mother. At the hearing, it was revealed that ADES had conducted an 822 review on May 17, the day of the 824 hearing, and the review team supported removing the Child from the home.[1] The court

1. The record does not indicate why, having received Mother's motion for return of the Child

for failure to perform the 822 review, ADES did

declined to hear evidence pertaining to the Child's health and safety, reasoning that a hearing was inappropriate if no 822 review authorized removal of the Child in the first instance. Concluding that ADES had not timely performed an 822 review, the court ordered ADES to return the Child to Mother by 5 p.m. that day; the court did so without hearing evidence or mentioning the Child's health and safety.[2] ADES immediately petitioned this court for special action relief and requested a stay of the juvenile court's order returning the Child to Mother. We granted a stay of the order requiring ADES to return the Child to Mother but did not stay any other proceedings during our special action review.[3]

## DISCUSSION

■ ¶6 The issue is whether defective compliance with A.R.S. § 8–822.3 justifies releasing the Child from temporary custody without first inquiring as to the effect on her wellbeing. Mother argues that because A.R.S. § 8–822.3 expressly states that 822 review "shall be conducted before the dependency petition is filed," the review is mandatory and must be performed prior to any further proceedings. "Because the interpretation of an Arizona statute involves legal rather than factual questions, we are not bound by the trial court's conclusions of law, and conduct a *de novo* review of the applicable statutes and regulations." *Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (App.1991).

■ ¶7 "In interpreting a statute, we first look to the language of the statute itself." *Lincoln v. Holt,* 215 Ariz. 21, 24, ¶7, 156 P.3d 438, 441 (App.2007) (citation and quotation marks omitted). "Words are given their ordinary meaning unless the context of the statute requires otherwise." *HCZ*

*Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶10, 18 P.3d 155, 158 (App.2001). "[A] statute should be construed in conjunction with other statutes that relate to the same subject or purpose...." *Johnson v. Mohave Cnty.,* 206 Ariz. 330, 333, ¶11, 78 P.3d 1051, 1054 (App.2003). Our construction should harmonize related statutes together "as though they constituted one law." *Moreno v. Jones,* 213 Ariz. 94, 99, ¶28, 139 P.3d 612, 617 (2006). We also strive to avoid an "interpretation [that] would lead to an absurd result." *Resolution Trust Corp. v. Western Technologies, Inc.,* 179 Ariz. 195, 201, 877 P.2d 294, 300 (App.1994).

¶8 A child may be removed by "a child protective services worker if temporary custody is clearly necessary to protect the child." A.R.S. § 8–821.B (Supp.2010). After a child is removed, and if "removal of a child ... is expected to result in a dependency petition," a review "to assess options other than continued out-of-home placement ... shall be conducted [by a review team][4] before the dependency petition is filed." A.R.S. § 8–822.3. If a majority of the review team does not agree that removal is necessary, the child shall be returned to the home. *Id.* "A child shall not remain in temporary custody for more than seventy-two hours." A.R.S. § 8–821.F. Thus, after ADES has removed a child from the home, ADES must conduct an 822 review and if appropriate file a dependency petition, both within three days; otherwise it must return the child to the parent.

¶9 The language of A.R.S. § 8–822.3 does not specifically address a situation such as presented here, when the dependency petition is filed prior to a child's removal. Mother argues that because A.R.S. § 8–822.3 specifies that ADES conduct the 822 review before it files the dependency petition, the

not immediately give notice that it had conducted the 822 review.

2. The juvenile court did not dismiss the dependency petition.

3. We previously issued an order accepting jurisdiction, granting relief, and vacating the juvenile court order requiring the return of the Child to Mother, until such time as the juvenile court conducted a hearing on whether the return of the

Child was appropriate and in her best interest. We further stated that a detailed written disposition fully explaining our decision would follow. This opinion provides that explanation.

4. "The review team shall consist of a protective services worker, a worker's supervisor and two members of the local foster care review board." A.R.S. § 8–822.3.

statute does not allow ADES to take custody of a child in a situation like this, in which ADES filed a dependency petition and obtained a temporary custody order prior to the removal of the child. ADES argues the statute has no application when the dependency petition is filed before it takes custody of a child. We need not decide the issue, however, because we conclude that even assuming ADES did not comply with the statute, the Child's health and safety must be given paramount consideration prior to release from temporary custody.

¶ 10 The juvenile court's order, which Mother supports, is based on a reading of A.R.S. § 8-822.3 that suggests anything short of precise compliance with the statute deprives ADES of the authority to maintain custody of the Child and demands her return. However, the plain language of the statute does not support this conclusion.

¶ 11 The statute does not specifically address the consequences of failing to conduct an 822 review or failing to conduct a timely 822 review; it indicates only that the Child's return is required when the majority of the review team believes that removal is unnecessary.

¶ 12 It is the longstanding policy of the state of Arizona to make the child's welfare the top priority in matters of custody. *See* A.R.S. § 8-821.C.1 ("[i]n determining if a child should be taken into temporary custody ... [the] paramount concern [is] the child's health and safety"); *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8, 187 P.3d 1115, 1117 (App.2008) ("the court's primary consideration in dependency cases is the best interest of the child"); *see also* A.R.S. § 25-403.B (Supp.2010) (requiring specific findings regarding the best interests of the child in custody disputes among parents); *Dickason v. Sturdavan*, 50 Ariz. 382, 386, 72 P.2d 584, 586-87 (1937) ("the pole star by which [the court] is led to a decision is [the child's] best interest").

¶ 13 The principle of treating the child's welfare as paramount remains true through-out all stages of the removal and dependency determination process. *See generally* A.R.S. §§ 8-823.D (Supp.2010) ("the child's health and safety shall be a paramount concern"); 8-829.A (Supp.2010) ("[i]f a child has been removed from the child's home, the court shall make protecting the child from abuse or neglect the first priority"); 8-845.B (Supp. 2010) ("the court shall consider the health and safety of the child as a paramount concern"); 8-847.D (Supp.2010) ("the court shall consider the health and safety of the child as a paramount concern"). "When a state expresses such an interest through particular legislation, its policy judgments are entitled to judicial deference." *Diana H. v. Rubin*, 217 Ariz. 131, 136, ¶ 23, 171 P.3d 200, 205 (App.2007).

¶ 14 In all cases in which a child is held in temporary custody for five days or longer—that is, after a dependency petition has been filed—the juvenile court has a duty to conduct a preliminary protective hearing.[5] A.R.S. § 8-824.A ("The court shall hold a preliminary protective hearing to review the taking into temporary custody of a child ... not fewer than five days nor more than seven days after the child is taken into custody...."). "At the [preliminary protective] hearing, the court ... [s]hall give paramount consideration to the health and safety of the child." A.R.S. § 8-824.E.9.

¶ 15 This policy of treating the child's health and safety as paramount when holding a child in temporary custody is also evident in the Arizona Rules of Procedure for the Juvenile Court (Rules). Rule 59.A states that "[a]ny time after the temporary custody hearing," a parent may request, and "[t]he court shall set[,] a hearing to determine whether return of the child would create a substantial risk of harm to the child's physical, mental or emotional health or safety." Thus, when considering whether to release a child from custody, the juvenile court's chief concern, and the overarching purpose of the governing statutes and Rules, is to protect the child's health and safety.

---

5. Because a child cannot be held in temporary custody for more than three days in the absence of a dependency petition, and a preliminary protective hearing cannot occur until the child has been in temporary custody for at least five days, a petition must be filed to precipitate the hearing.

¶ 16 To hold that ADES's failure to comply with A.R.S. § 8–822.3 mandates release of a child from temporary custody regardless of the child's welfare would elevate form over substance. Such a reading of the statute would subordinate the welfare of the Child to the very procedures established to protect the Child's health and safety. This contradicts the explicit purpose of the governing statutes and Rules, which expressly declare the Child's health and safety as paramount.

¶ 17 Mother, however, argues that the use of the word "shall" in § 8–822.3 means the statute imposes a mandatory duty on ADES. "Although the word 'shall' usually indicates a mandatory provision, the word has also been construed to indicate desirability, preference, or permission." *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). "Language that is mandatory in form may be deemed directory when such construction best serves the legislative purpose." *Forino v. Ariz. Dept. of Transp.*, 191 Ariz. 77, 80, 952 P.2d 315, 318 (App.1997). "The essential difference between a mandatory and a directory provision is that failure to comply with a directory provision does not invalidate the proceeding to which it relates, while failure to follow a mandatory provision does." *HCZ Constr., Inc.*, 199 Ariz. at 364 n. 1, ¶ 9, 18 P.3d at 158 n. 1.

¶ 18 In *Forino*, we held that the failure of the Arizona Department of Transportation (ADOT) "to conduct the suspension hearing within the thirty-day time period did not divest the agency of jurisdiction." 191 Ariz. at 81, 952 P.2d at 319. The issue was whether ADOT retained jurisdiction to suspend a driver's license after failing to timely conduct a hearing in accordance with the governing statute. *Id.* at 79, 952 P.2d at 317. The statute employed the word "shall" in prescribing a maximum thirty-day time limit for conducting requested hearings. *Id.* This court reasoned that "if a statute 'states the time for performance of an official duty, without any language denying performance after a specified time, it is directory.'" *Id.* at 81, 952 P.2d at 319. Thus, because the statute in question prescribed a time limit for conducting the required suspension hearing,

but without describing the consequences for untimely compliance, the statute was given a directory construction in the interest of better-serving the purpose of the law. *Id.*

¶ 19 The language of A.R.S. § 8–822.3 may imply that the prescribed sequence for reviewing a child's removal and filing a dependency petition is mandatory. However, like the statute in *Forino*, A.R.S. § 8–822.3 does not specify consequences for failure to strictly adhere to the prescribed sequence. In view of the policy considerations at stake, we hold that reading the statute as mandatory poorly serves the statute's purpose. For that reason, we instead construe it to be directory. Thus, an untimely 822 review does not halt subsequent proceedings nor mandate releasing a child from temporary custody if it would jeopardize the child's health or safety.

¶ 20 In this case, a dependency petition was filed prior to the Child's removal, both the 822 review and 824 hearing were held on May 17, 2011, and the juvenile court ordered that the Child remain in temporary custody. At the 824 hearing, Mother denied the allegations of the dependency petition, but did not contest temporary custody of the Child.

¶ 21 During the May 25 and June 2 hearings the juvenile court did not hear evidence or mention the health and safety of the Child before ordering her return to Mother. The juvenile court reasoned that ADES's defective compliance with § 8–822.3 mandated releasing the Child from temporary custody into Mother's care regardless of any concern for the Child's welfare.

¶ 22 Not only does the juvenile court's order fail to serve the legislative purpose of safeguarding the Child's welfare, but it also risks absurd results. Presumably, had the order been carried out, ADES would have restarted the sequence of events required by the statute and ultimately taken the Child back into temporary custody. In the meantime, the Child's health and safety would have remained at risk while in Mother's care, as previously determined at the 822 review and by the juvenile court at the 824 hearing.

¶ 23 While the juvenile court may have had the power to impose some sanction on ADES, perhaps by ordering it to conduct the 822 review by a date certain, ADES's failure to have conducted the review prior to filing the dependency petition does not justify placing the health and safety of the Child at risk.[6] *See Hays v. Gama,* 205 Ariz. 99, 102, ¶ 18, 67 P.3d 695, 698 (2003) (holding that court must consider best interests of the child when deciding whether to impose contempt sanctions in custody case). Moreover, our reading of the applicable statutes does not allow such a result. The clear purpose of the governing statutes and Rules demands that in dependency cases, if a child is held in temporary custody, all other considerations become subordinate to the child's health and safety. Thus, the juvenile court erred, in this case, by ordering ADES to return the Child to Mother without hearing evidence as to the Child's health and safety.

**6.** We note that there is no evidence of bad faith on the part of ADES. ADES assembled a review team in order to comply with the statute despite already having filed the dependency petition. Given that ADES conducted the 822 review shortly after the Child was taken into custody, it was not likely that ADES intended to avoid § 8–822.3. However, the record on this point was not developed and we leave this determination to the juvenile court.

**CONCLUSION**

¶ 24 For the above mentioned reasons, we accept jurisdiction, grant relief and vacate the juvenile court's order returning the Child to Mother's custody, unless and until the juvenile court conducts a hearing and determines that Child's health and safety would not be at risk.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge, and ANN A. SCOTT TIMMER, Judge.