NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DANIEL L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.L. S.L., A.L., *Appellees*.

No. 1 CA-JV 16-0488
FILED 4-27-2017

---

Appeal from the Superior Court in Coconino County
No. S0300JD201600034
The Honorable Margaret A. McCullough, Judge

**JURSIDICTION ACCEPTED; RELIEF DENIED**

---

COUNSEL

Coconino County Public Defender's Office, Flagstaff
By Sandra L.J. Diehl
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Donn Kessler and Judge Patricia A. Orozco[1] joined.

---

**T H U M M A**, Judge:

¶1          Daniel L. (Father) challenges the superior court's order that continued out of home custody of his children D.L., S.L. and A.L. (collectively Children) was clearly necessary to prevent abuse or neglect.[2] This court accepts special action jurisdiction over Father's challenge but denies relief because Father has not shown the court erred.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          D.L. was born in 2011; S.L. in 2013 and A.L. in 2016. At birth, A.L. tested positive for amphetamine and the Department of Child Safety (DCS) intervened, but did not remove the Children from parents' care at that time. DCS did, though, direct Father to "submit to urine and hair-follicle drug tests by the end of the week." Father, however, was arrested the same day for possession of prescription medication and theft.

¶3          After learning A.L.'s meconium tested positive for methamphetamine and marijuana, DCS attempted to locate the family. DCS, however, was unable to locate the family for eight days. Kristen M. (Mother) was in jail for domestic violence committed with the paternal grandmother in the presence of the Children. Father then assumed care of the Children, but returned them to Mother's care immediately after she was released from jail.

¶4          After DCS finally contacted the family at a pediatrician's office, DCS took custody of the Children. DCS offered Father services, including drug testing, but he "refused to do anything." DCS then filed a

---

[1] The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

[2] Mother is also subject to the order but she is not a party to this appeal.

dependency petition, alleging the Children were dependent as to Father because he neglected them by failing to protect them from Mother, given her drug use and unstable living situation.

**¶5**        Father requested a review of temporary custody hearing. *See* Ariz. R.P. Juv. Ct. 51 (2017).[3] At a three-day evidentiary hearing, Father testified. During questioning by the State, Father was argumentative and evasive, with the court reminding him numerous times to properly answer the questions. At the close of the hearing, the court took the matter under advisement and later found by a preponderance of the evidence the State "met its burden that continued custody of the [C]hildren is clearly necessary to prevent abuse or neglect." The court based its decision in part on Father's refusal to cooperate, causing "serious concerns whether [F]ather will comply with the court's direction and orders." The court expressed concerns that Father returned the Children to Mother immediately after her release from jail for domestic violence. Father timely seeks review of that decision by this court.[4]

**DISCUSSION**

**¶6**        Father argues this court can exercise appellate review while the State argues this court lacks appellate jurisdiction. As noted by the parties, whether the temporary custody order was appealable is the subject of decisions that at least facially appear difficult to reconcile. *Compare Yavapai Cty. Juv. Action No. J-8545*, 140 Ariz. 10, 14 (1984) ("very narrow, technical conception of what constitutes a final order" should not apply "in cases involving the important and fundamental right to raise one's children;" "A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials.") *with Maricopa Cty. Juv. Action No. JT-295004*, 126 Ariz. 409, 411 (App. 1980) (noting, to be appealable, a final order "must dispose of all of the issues"). This court need not attempt to finally reconcile that issue here. Even if appellate jurisdiction is lacking, this court has the "discretion to consider the matter as a special action." *State v. Perez*, 172 Ariz. 290, 292 (App. 1992); *see also Danielson v. Evans*, 201 Ariz. 401, 411 ¶ 35, 36 (App. 2001) (sua sponte

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[4] In November 2016, in an unsigned minute entry, the Children were found dependent. Father did not appear at the hearing and that ruling is not at issue here.

accepting special action jurisdiction). Accordingly, the court in its discretion will entertain Father's challenge to the temporary custody order by accepting special action jurisdiction. *See* A.R.S. § 12–120.21(A)(4); Ariz. R.P. Spec. Act. 1(a).

¶7 Father argues the superior court abused its discretion because "the record lacks evidence to support its ruling," citing various factors he asserts militate against temporary custody.[5] The record, however, reflects adequate record evidence to support the ruling. For example, Father admitted he refused to cooperate with DCS, returned the Children to Mother despite her domestic violence in their presence and allowed the Children to remain in Mother's care despite her drug use. The superior court properly considered this evidence when making its decision. This court will not re-weigh the evidence on appeal and "will not disturb the juvenile court's order unless no reasonable evidence supports its factual findings." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287 ¶ 16 (App. 2016).

¶8 As to Father's argument that DCS did not offer services to prevent removal, the record is to the contrary. DCS did not immediately remove the Children when A.L. was born substance-exposed. DCS then made multiple attempts to contact the family and DCS offered random drug testing. DCS' inability to locate Father is due to his own actions and Father then refused to participate in numerous drug tests. Father explicitly told DCS that he would not do anything until after they returned his Children to his care. Father has not shown that DCS failed to make reasonable efforts to prevent removal.

¶9 Finally, Father argues that because the court did not make explicit findings that reasonable efforts were made to prevent removal of the Children, such efforts were not made. Not so. To hold that failure to make explicit findings of reasonable efforts "mandates release of a child from temporary custody regardless of the child's welfare would elevate form over substance. Such a reading of the statute would subordinate the welfare of the Child[ren] to the very procedures established to protect the Child[ren's] health and safety." *Arizona Dept. of Econ. Sec. v. Lee ex rel. Cty of Maricopa*, 228 Ariz. 150, 154 ¶ 16 (App. 2011). There is ample evidence in the record to support the court's order and its implicit findings that DCS made

---

[5] Father argues that "[c]oncerns about [Father's] future involvement with criminal activities" should not be grounds for removal. However, there is no indication that the court relied on these concerns as a basis for ordering temporary custody.

reasonable efforts to offer services to Father. And after removal, as Father concedes, DCS offered Father numerous services, but he refused to participate.

**¶10**     Father asserts that, although services were offered after removal, they "would not facilitate reunification of the family when the concerns voiced by DCS were father's willingness to participate in services, parenting skills, domestic violence in the past and his criminal history or involvement in criminal activities." Contrary to Father's argument, DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Given that the concerns regarding Father were his inability or unwillingness to recognize when his children are in danger, his evasive behavior and refusal to cooperate, services such as parenting skills and drug testing were appropriate. Father has not shown the court abused its discretion.

## CONCLUSION

**¶11**     Accepting special action jurisdiction, because Father has not shown the temporary custody order was in error, this court denies relief.

