NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KRISTINA T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,
T.H., J.J., K.J., M.T., *Appellees*.

No. 1 CA-JV 17-0092
FILED 10-27-2017

Appeal from the Superior Court in Maricopa County
No.   JD529294
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**B R O W N**, Judge:

¶1        Kristina T. ("Mother") appeals the superior court's order adjudicating her four children dependent.  She argues the court erred by failing to make specific findings of fact and the record lacks sufficient evidence supporting the court's ruling.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        Mother is the biological parent of T.H. (born 2002), J.J. (born 2004), K.J. (born 2004), and M.T. (born 2010).[1]  In October 2015, the Department of Child Safety ("DCS") took the children into temporary physical custody.[2]  A week later, DCS filed a dependency petition, alleging the children were dependent due to Mother's abuse and/or neglect.

¶3        As relevant here, DCS alleged that Mother, who is unemployed, failed to provide her children with the basic necessities of life, including, but not limited to, appropriate parental care and supervision. DCS alleged that the children were often left unsupervised and that they begged for food and water around their neighborhood.  DCS also alleged that Mother was unable to parent due to substance abuse, reportedly, marijuana and spice.  Finally, according to DCS, Mother failed to protect her children from sexual abuse, asserting that she did not notify the police when J.J. reported being molested in California by a cousin and an uncle. Mother denied the allegations of the petition.

---

[1]      The superior court found all four children dependent as to their respective fathers, who are not parties to this appeal.

[2]      T.H., K.J., and M.T. were placed with Mother's brother and his wife where they remained through the adjudication hearing.  J.J.'s placement in foster care and group homes has changed several times during the pendency of this case.

¶4           After participating in a dependency mediation in December 2015, Mother agreed to the placement of T.H., K.J., and M.T. with a relative, and J.J. in therapeutic foster care. Mother agreed that parenting time would include a minimum of one supervised visit per week with T.H., K.J., and M.T., but that visits with J.J. would be based on his wishes. DCS agreed to offer, and Mother agreed to participate, in the following services: substance abuse testing and treatment, psychological evaluation, parent aide, and a self-referral for individual counseling. Mother also agreed that DCS would offer, in part, behavioral health services and counseling for the children, including family sessions "when appropriate." The superior court approved the mediation agreement.

¶5           Mother regularly attended visitation with the children, but not all of them participated. DCS established therapeutic visitation to facilitate communication between T.H., K.J., M.T., and Mother, but, by the time of the dependency hearing, no family counseling had been implemented due to T.H. and K.J.'s reluctance to engage or even visit with Mother at times. Based on his request, J.J. had not participated in visits with Mother for at least one year. After missing three appointments, Mother eventually participated in a psychological evaluation with Dr. Jessica Leclerc in June 2016. Mother was also referred for parent-aide services, but she ultimately failed to meet any of her parent-aide goals.

¶6           At the February 2017 dependency hearing, DCS withdrew the substance abuse allegation because Mother tested negative for drugs for over one year and had addressed her substance abuse through therapy. After considering testimony and exhibits, the superior court found that DCS proved the dependency of the children by a preponderance of the evidence due to Mother's ineffective parental care and control and the children's exhibition of disruptive behaviors, poor school performance, and varying degrees of distress over returning to Mother.[3] The court noted that "[t]o Mother's credit, she recognizes that each child is on a different path to return home. She also supports the continuation of services for the children." Mother timely appealed the dependency order.

---

[3]      The record shows that the dependency hearing did not occur until *15* months after the dependency petition was filed. Although the record does not indicate that either party objected to the delay, the record also fails to reflect any good cause or extraordinary case finding by the superior court as required by Arizona Revised Statutes ("A.R.S.") section 8-842(C), which states that an out-of-home "dependency adjudication hearing shall be completed within ninety days after service of the dependency petition."

## DISCUSSION

### A. Sufficiency of Findings

**¶7** Mother challenges the superior court's lack of factual findings in the dependency ruling. DCS counters that Mother waived her challenge to the court's findings because she failed to raise an objection in the superior court.

**¶8** As a general rule, we will not address an issue raised for the first time on appeal, "particularly [] as it relates to the alleged lack of detail in the juvenile court's findings." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21 (App. 2007) (citations omitted). "[A] party may not 'sit back and not call the trial court's attention to the lack of a specific finding on a critical issue, and then urge on appeal that mere lack of a finding on that critical issue as a ground for reversal.'" *Id.* (quoting *Bayless Inv. & Trading Co. v. Bekins Moving & Storage Co.*, 26 Ariz. App. 265, 271 (1976)). We recognize that under the juvenile rules of procedure, Mother did not have a defined avenue by which to object to the ruling, and that she may have reasonably believed her only recourse was an appeal. However, for the reasons that follow, we find the issue waived.

**¶9** The primary purpose of the dependency statutes and rules is to ensure that all actions taken are in the children's best interests, and to address a procedural error for the first time on appeal is inconsistent with that purpose. *See Joshua J. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 417, 422, ¶ 17 (App. 2012) ("[I]f dependency is proven, a prompt adjudication enhances finality and a child's stability by more quickly initiating either reunification efforts or termination proceedings," thereby protecting the best interests of the child.); *Ariz. Dep't of Econ. Sec. v. Lee*, 228 Ariz. 150, 153, ¶ 15 (App. 2011) ("[T]he juvenile court's chief concern, and the overarching purpose of the governing statutes and [r]ules, is to protect the child's health and safety.").

**¶10** Furthermore, "absent extraordinary circumstances, errors not raised in the superior court cannot be raised on appeal" because the "court and opposing counsel should be afforded the opportunity to correct any asserted defects[.]" *Trantor v. Fredrikson*, 179 Ariz. 299, 300 (1994) (citations omitted). Extraordinary circumstances are errors equivalent to fundamental error. *See id.* at 300-01. When no objection is made, we review non-compliance with the juvenile court procedural rules (i.e., failure to make specific findings of fact) for fundamental error. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 22 (App. 2005). To establish fundamental error, parents must show that the error "goes to the

foundation of [their] case, takes away a right that is essential to [their] defense, and is of such magnitude that [they] could not have received a fair trial." *Id.* at ¶ 24 (citations omitted). Parents must also establish they were prejudiced by such error. *Id.* at 94-95, ¶ 25.

**¶11** Without question, findings of fact and conclusions of law are helpful for appellate review, but "they do not go to the foundation of the case or deprive a party of a fair hearing." *Trantor*, 179 Ariz. at 300-01. Further, Mother has not established she was prejudiced by the superior court's failure to make specific findings of fact, and our review of the record indicates she had a fair hearing. Mother was represented by counsel and testified by making a statement to the court. She had the opportunity to present documentary evidence and cross-examine witnesses. Mother has therefore failed to establish that fundamental error occurred by the court's failure to include express findings of fact.

**¶12** Notwithstanding our decision to apply waiver here, we urge strict compliance with Arizona Rule of Procedure for the Juvenile Court 55(E). *See Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012) ("The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the juvenile court correctly applied the law."). The requirement that the court include specific findings of fact in a signed order or a minute entry is prevalent throughout the rules that govern the procedures for handling dependency and termination hearings. *See* Ariz. R.P. Juv. Ct. 50-66. Moreover, in addition to aiding appellate review, the inclusion of specific findings establishes a baseline against which the court can measure the progress of a parent's efforts to regain custody of his or her child. *See, e.g.*, A.R.S. § 8-533(B)(8)(c) (describing as a partial ground for termination that "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement").

## B. Sufficiency of Evidence

**¶13** Mother also argues the superior court erred because insufficient evidence supports the dependency finding. We review a dependency order for abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). As the trier of fact, the court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Thus, we will not disturb a dependency adjudication for insufficient evidence "unless no reasonable

evidence supports it." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). To decide whether a child is dependent, the court must consider those circumstances existing at the time of the adjudication hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

**¶14** A "dependent child" is one who is "[i]n need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control" or one "whose home is unfit by reason of . . . neglect . . . ." A.R.S. § 8-201(15)(a)(i), (iii). Neglect is "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter, or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare . . . ." A.R.S. § 8-201(25)(a). We conclude that reasonable evidence supports the superior court's finding that all four children are dependent as to Mother because she is not currently capable of exercising effective care and control of the children.

**¶15** In her June 2016 psychological evaluation, Dr. Leclerc stated that Mother was "experiencing symptoms of an Unspecified Trauma-and Other-Stressor Related Disorder, which is related to her personal history of emotional, sexual, and physical abuse." Dr. Leclerc opined that if Mother "does not address her trauma history and develop healthier coping skills, she will remain at risk for neglecting her children." She also stated that "the prognosis is guarded that she can demonstrate minimally adequate parenting skills in the foreseeable future." She therefore recommended that Mother complete, among other services, parenting classes, parent aide, and individual counseling.

**¶16** DCS case manager Sidney Mack testified at the dependency hearing that Mother's parent-aide services were terminated after Mother had worked with three separate parent aides, one of whom had experience in dealing with behavioral health issues. Even with the experienced aide, Mother's parent-aide services ended "because the behavior changes requested of Mother could not be achieved and [she] was either unable or unwilling to achieve the changes." As noted in the parent-aide report, Mother was unable to (1) demonstrate appropriate parenting skills and nurturance with the children, (2) administer proper discipline, (3) recognize how substance abuse affects parenting, (4) demonstrate that she understands the importance of building healthy relationships, or (5) show she can address her children's special needs.

**¶17** Dr. Leclerc testified that based on Mother's recent successful completion of individual counseling, she should be able to adequately

parent. However, when asked whether the prognosis of ability to parent would change based on Mother's failure to successfully complete parent-aide services, Dr. Leclerc stated that she would "want her to be able to successfully complete aide services and demonstrate the skills that she learns from those services. Just as the other services that I had recommended." Dr. Leclerc also clarified it was "extremely important" that Mother successfully learn coping skills to manage stress and anger before the children return to her care.

¶18        Mack also testified it would not be in T.H.'s best interests to return to Mother and that K.J. wished to remain with his aunt and uncle until the end of the school year. As to J.J., Mother acknowledged she is not the best placement for him, and Mack opined it would not be in his best interests to return to Mother. In addition, Mack explained that Mother's behavioral health issues were pronounced and known to the children, and they did not wish to return to Mother until those issues were resolved.

¶19        Given the testimony provided by Mack and Dr. Leclerc, as well as the numerous reports admitted at the hearing without objection, the superior court did not abuse its discretion in finding the children dependent as to Mother because there was reasonable evidence showing that each child needed, and Mother was incapable of exercising, proper and effective parental care and control. Reasonable evidence also shows that the court's dependency order was in each child's best interests. *See Willie G.* at 235, ¶ 21 (App. 2005) ("[B]ecause the primary consideration in a dependency case is always the best interest of the child, . . . the juvenile court is vested with a great deal of discretion.") (internal quotation and citation omitted).

**CONCLUSION**

¶20　　　The superior court's order finding the children dependent as to Mother is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:　AA