IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DEPARTMENT OF CHILD SAFETY, *Petitioner*,

*v.*

THE HONORABLE KATHRYN STOCKING-TATE, Judge of the
SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County
of YUMA, *Respondent Judge*,

MARK R., M.S., and L.R.-S., *Real Parties in Interest*.

No. 1 CA-SA 19-0001
FILED 6-14-2019

Petition for Special Action from the Superior Court in Yuma County
No. S1400JD20180551, S1400JD20180552
The Honorable Kathryn E. Stocking-Tate, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Dawn Rachelle Williams
*Counsel for Petitioner*

Law Office of Denise-Avila Taylor, Yuma
By Denise Avila-Taylor
*Counsel for Real Party in Interest Mark R.*

Law Office of Heather C. Vinci, P.L.L.C, Yuma
By Heather C. Vinci
*Counsel for Real Parties in Interest M.S. and L.R.-S.*

OPINION

Judge Kenton D. Jones delivered the Opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Chief Judge Samuel A. Thumma joined.

---

**J O N E S**, Judge:

**¶1**        The Department of Child Safety (DCS) seeks special action review of a juvenile court order granting a motion by Mark R. (Father) to strike an *ex parte* order authorizing DCS to take temporary custody of two young children.  In our discretion, we accept special action jurisdiction and hold that the legal standard to be applied to a motion challenging temporary custody depends upon the timing of the motion.  Because the court applied an incorrect legal standard here, we grant relief and vacate the order granting Father's motion.

## FACTS AND PROCEDURAL HISTORY

**¶2**        On October 26, 2018, M.S., an Indian child, was born substance-exposed.  At the same time, her mother (Mother) tested positive for methamphetamine.  Two days later, DCS filed an electronic application and sworn declaration in Maricopa County Superior Court seeking an *ex parte* order authorizing it to assume temporary custody over M.S. and his eighteen-month-old sister, L.S.-R. (collectively, the Children).  *See* Ariz. Rev. Stat. (A.R.S.) § 8-821(B)[1] (authorizing temporary custody where, "on a sworn statement or testimony," the court finds "probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect and it is contrary to the child's welfare to remain in the home"); Ariz. R.P. Juv. Ct. 47.3(A) ("On application under oath . . . , the court will determine whether to authorize [DCS] to take temporary custody of a child.").

**¶3**        After considering DCS's application and sworn declaration, the superior court found it "contrary to the [C]hildren's welfare to remain" with Mother and Father and that "temporary custody was necessary to

---

[1]        Absent material changes from the relevant date, we cite the current version of rules and statutes.

prevent imminent physical damage or harm to the [C]hildren." Thus, on October 28, 2018, the court found probable cause "to believe that temporary custody is clearly necessary to protect" the Children and issued an *ex parte* order authorizing DCS to take temporary custody of the Children.[2]

¶4 DCS took custody of the Children, and, on October 31, 2018, filed a verified petition in Yuma County Superior Court alleging the Children were dependent as to Mother and Father based upon substance abuse and neglect. After reviewing the petition, the juvenile court found it would be contrary to the Children's welfare to place them with Mother and Father and issued a separate order, on November 1, authorizing DCS's temporary custody of the Children. *See* A.R.S. § 8-821(B) (authorizing temporary custody where, "on a dependency petition filed . . . under oath," the court finds "probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect and it is contrary to the child's welfare to remain in the home"); Ariz. R.P. Juv. Ct. 48(B) ("Upon the filing of a [dependency] petition, the court may issue temporary orders necessary to provide for the safety and welfare of the child."). The court also scheduled and held a preliminary protective hearing (PPH) on November 6. Although Father did not appear, at the conclusion of the PPH, the court issued a third order finding temporary custody was necessary to prevent abuse and neglect and that return of the Children to Mother and Father was contrary to their best interests. *See* Ariz. R.P. Juv. Ct. 50(A) ("At the [PPH], the court shall determine whether continued temporary custody of the child is necessary and shall enter appropriate orders as to custody . . . .").

¶5 Three days later, Father personally appeared before the juvenile court at the initial dependency hearing (IDH). Although given the opportunity to do so, Father did not challenge the orders authorizing temporary custody of the Children at the IDH. At the conclusion of the hearing, the court again found "temporary custody [with DCS] is necessary to prevent abuse or neglect and return of the Children to the Parents . . . is contrary to the best interest[s] of the Children" and issued a fourth order authorizing temporary custody on November 9, 2018. *See* Ariz. R.P. Juv. Ct. 52(D)(6) ("At the conclusion of the [IDH] the court shall . . . [a]ffirm prior orders making the child a temporary ward of the court[.]").

¶6 On November 27, 2018, Father filed a motion to return the Children to his care, arguing that the October 28 application and sworn

---

2   The *ex parte* order also authorized removal of three of the Children's half-siblings who are not at issue here.

declaration in support of DCS's request for the original *ex parte* temporary custody order "d[id] not set forth sufficient facts to support findings of probable cause" to remove the Children from his care. In response, DCS asked the juvenile court to set an evidentiary hearing pursuant to Arizona Rule of Procedure for the Juvenile Court (Rule) 59. *See* Ariz. R.P. Juv. Ct. 59(E)(1) (authorizing the juvenile court to return a child to a parent upon request made after the PPH if it finds, "by a preponderance of the evidence, that return of the child would not create a substantial risk of harm to the child's physical, mental or emotional health or safety"). The court held oral argument on December 31 but did not apply Rule 59 or require Father to show the Children would be safe in his care; nor did the court allow DCS to present evidence regarding the need for continued out-of-home care. Instead, the court found the application and declaration in support of the *ex parte* order deficient and ordered the Children returned to Father. This Court stayed the return order pending resolution of the special action.

## JURISDICTION

¶7            This Court has discretion to accept special action jurisdiction and will generally do so when there is no equally plain, speedy, and adequate remedy by appeal and the case presents purely legal issues, issues involving a matter of first impression, or issues of statewide importance. *See* Ariz. R.P. Spec. Act. 1(a); *Glenn H. v. Hoskins*, 244 Ariz. 404, 407, ¶ 7 (App. 2018) (quoting *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 585, ¶ 8 (App. 2001)). Invoking "[s]pecial action jurisdiction is also appropriate to prevent the superior court from acting without jurisdiction." *Glenn H.*, 244 Ariz. at 407, ¶ 7 (citing *Caruso v. Superior Court*, 100 Ariz. 167, 170 (1966)).

¶8            The appropriate mechanism to challenge a temporary custody order presents a novel legal question of statewide importance. Accordingly, we accept jurisdiction of DCS's petition.

## DISCUSSION

¶9            DCS argues the juvenile court failed to comply with applicable law when considering Father's motion. To resolve this issue, we interpret and apply the statutes and procedural rules governing temporary custody orders, a task undertaken *de novo*. *See Logan B. v. DCS*, 244 Ariz. 532, 537, ¶ 12 (App. 2018) (citing *Premier Physicians Grp., P.L.L.C. v. Navarro*, 240 Ariz. 193, 194-95, ¶ 6 (2016), and *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 155, 161, ¶ 19 (App. 2008)). If the rules and statutes are clear and unambiguous, we apply the plain meaning as written. *Id.* (quoting *State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017)).

¶10 Until recently, DCS assumed temporary custody over a child using a DCS-issued "temporary custody notice" that involved no advanced court review or approval. *See, e.g.*, *Kimu P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 39, 41, ¶ 5 (App. 2008); *Michael J., Jr. v. Michael J., Sr.*, 198 Ariz. 154, 155, ¶ 4 (App. 2000). In 2017 and 2018, in response to litigation in federal court concerning the constitutionality of removing a child from a parent's care without judicial authorization, *see Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294-96 (9th Cir. 2007) (collecting cases), the legislature amended A.R.S. § 8-821(A) to abolish this practice, *see* 2018 Ariz. Sess. Laws, ch. 191, § 1 (2d Reg. Sess.); 2017 Ariz. Sess. Laws, ch. 282, § 3 (1st Reg. Sess.). Our supreme court adopted Rule 47.3, effective July 1, 2018, to implement those amendments.

¶11 Currently, absent exigent circumstances or parental consent, DCS may take temporary custody of a child only if it first obtains an *ex parte* order authorizing it to do so on the grounds that "probable cause exists to believe that temporary custody is clearly necessary to protect the child from suffering abuse or neglect." A.R.S. § 8-821(A)-(B); *accord* Ariz. R.P. Juv. Ct. 47.3(B). If the child is an Indian child, the superior court must also find "temporary custody is necessary to prevent imminent physical damage or harm to the child." Ariz. R.P. Juv. Ct. 47.3(B). DCS may request such an order from Maricopa County Superior Court "[o]n application under oath." Ariz. R.P. Juv. Ct. 47.3(A); *accord* A.R.S. § 8-821(B); *see also* Sup. Ct. Admin. Dir. No. 2018-06 (requiring all applications for orders authorizing a child's removal to be filed in Maricopa County Superior Court); *accord* Ariz. R.P. Juv. Ct. 47.3(C)(1).

¶12 Father relies exclusively upon principles underlying the issuance of criminal warrants to justify his objection to the juvenile court's procedural approach. But, although a criminal warrant and an *ex parte* temporary custody order in a dependency proceeding have some similarities, they are quite different in practice. Most notably, a criminal warrant is not reviewed unless challenged. By contrast, an *ex parte* order authorizing temporary custody either expires automatically if no dependency petition is filed, or, if a dependency is initiated, subject to automatic, immediate, and continued review and scrutiny. Pursuant to Rule 47.3(D)(4), "[t]he temporary custody authorized by the [*ex parte*] order will expire after 72 hours excluding Saturdays, Sundays and holidays unless a dependency petition is filed. Ariz. R.P. Juv. Ct. 47.3(D)(4). Thereafter, "[t]he court with dependency jurisdiction over the child will review continuation of temporary custody as provided in [the Rules]." *Id.* Thus, unlike a criminal warrant, a temporary custody order is subject to continuous review by the juvenile court.

**¶13**          The continuous-review process promulgated by our legislature and supreme court begins as soon as a child is removed from the home:

- Between five and seven days after a child is taken into custody, "[t]he court shall hold a [PPH] to review the taking into temporary custody of a child pursuant to [A.R.S.] § 8-821."[3]  A.R.S. § 8-824(A); *see also* Ariz. R.P. Juv. Ct. 50(A) ("At the [PPH], the court shall determine whether continued temporary custody of the child is necessary."); *accord* Ariz. R.P. Juv. Ct. 47.3(D)(4); A.R.S. § 8-829(A)(1).

- After considering the allegations of a verified dependency petition, the juvenile court may issue temporary custody orders "necessary to provide for the safety and welfare of the child."  Ariz. R.P. Juv. Ct. 48(B); *see also* A.R.S. § 8-821(B) (authorizing issuance of a temporary custody order based upon review of the dependency petition); Ariz. R.P. Juv. Ct. 47.1(A) (directing the court to determine "[i]n the court's first order that sanctions the removal of a child in dependency proceedings, whether continuation of the child's residence in the home would be contrary to the welfare of the child.  This order may

---

[3]          We reject Father's suggestion that prompt review of temporary custody at the PPH violates the directive in the Indian Child Welfare Act (ICWA) that "[n]o foster care placement . . . proceeding [for an Indian child] shall be held until at least ten days after receipt of notice by the parent."  25 U.S.C. § 1912(a); *accord* Ariz. R.P. Juv. Ct. 48(D)(9); *see also* 25 U.S.C. § 1903(1)(i) (defining "foster care placement" to mean "any action removing an Indian child from its parent . . . for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent . . . cannot have the child returned upon demand").  The ten-day notice requirement does not apply where, as here, the PPH is part of an emergency proceeding to protect an Indian child from harm.  *See* Ariz. R.P. Juv. Ct. 48 cmt. ("When the [PPH] is held as an emergency hearing under [ICWA], the 10-day notice requirement does not apply."), 50(A) ("The [PPH] may be held as an emergency hearing as provided in [ICWA]."); 25 U.S.C. § 1922 ("Nothing in [ICWA] shall be construed to prevent the emergency removal of an Indian Child . . . under applicable State law, in order to prevent imminent physical damage or harm to the child."); 25 C.F.R. § 23.113(b)(3) (requiring the state court to continue to assess, as part of the emergency proceeding, whether continued temporary custody is necessary to protect the child from imminent harm).

be the temporary order that the court issues on the filing of a dependency petition.").

- Once a dependency petition is filed, "the court shall set the [IDH] within twenty-one days," A.R.S. § 8-842(A), at which time it is tasked with entering findings and orders concerning the placement and custody of the child, Ariz. R.P. Juv. Ct. 52(D)(6) ("At the conclusion of the [IDH] the court shall . . . [a]ffirm prior orders making the child a temporary ward of the court.").

- Thereafter, the juvenile court is directed to periodically address placement and the need for out-of-home care at the dependency adjudication, disposition, and review hearings. *See* Ariz. R.P. Juv. Ct. 55(E)(5) (directing the court to "[e]nter orders concerning the placement and custody of the child" at the dependency adjudication hearing); Ariz. R.P. Juv. Ct. 56(E)(2) (same at the disposition hearing); Ariz. R.P. Juv. Ct. 58(F)(3) (same at review hearings, which, pursuant to A.R.S. § 8-847(A), must be held "at least once every six months").

Thus, by rule and statute, temporary custody, even if initiated via an *ex parte* order, is reviewed first upon the filing of the dependency petition, a second time within five to seven days after the child is taken into custody at the PPH, and a third time within twenty-one days after the dependency petition is filed at the IDH. The need for continued out-of-home care is then reviewed at least once every six months until the dependency is resolved. Recurring review of a child's placement ensures that the court's orders remain in his best interests — a consideration that "permeates dependency and severance proceedings." *DCS v. Beene*, 235 Ariz. 300, 304, ¶ 9 (App. 2014) (collecting authority).

¶14　　　Importantly, the juvenile court does not engage in a perpetual review of the same evidence; the record differs — and typically expands — at each stage of review. While the initial temporary custody order is likely based solely upon the application and sworn declaration, *see* Ariz. R.P. Juv. Ct. 47.3(C), the order issued after a dependency petition is filed will be based upon the verified allegations in the petition, Ariz. R.P. Juv. Ct. 48(B); A.R.S. § 8-821(B), and the orders entered after the PPH, IDH, and review hearings may be informed by additional reports, evidence, and testimony, *see* Ariz. R.P. Juv. Ct. 50(B)(4), (6), 51(C), 58(C)-(E). The cumulative nature of the review process means the duration of a temporary order may be quite brief; each new order necessarily replaces the last as the court gains information and perspective. For these reasons, the timing of a parent's

challenge to temporary custody is critical to determining both the record upon which the review occurs and the standard to be applied.

¶15        Applying these principles, the original *ex parte* order authorizing temporary custody ceased to be of effect on November 1, 2018, when the juvenile court approved temporary custody based upon the allegations of the verified dependency petition. Therefore, to the extent Father's November 27 motion to return the Children sought to challenge the *ex parte* order, it was untimely and should have been denied.

¶16        Father suggests the juvenile court should treat the November 27 motion as a challenge to the temporary custody order issued at the PPH and governed by Rule 51. Rule 51 directs the court to set an evidentiary hearing "to determine whether removal of the child was necessary and whether the child should remain in out-of-home placement." Ariz. R.P. Juv. Ct. 51(A). At that hearing, DCS bears the burden of proving "there is probable cause to believe that continued temporary custody of the child is clearly necessary to prevent abuse or neglect." Ariz. R.P. Juv. Ct. 51(B). If the child is an Indian child, DCS must also prove "by clear and convincing evidence . . . that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child" and "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts have proven unsuccessful." *Id.*

¶17        By its terms, however, Rule 51 directs the court to conduct a hearing "if requested by the parent . . . at the [PPH]." Ariz. R.P. Juv. Ct. 51(A). Father did not challenge temporary custody at the PPH, and Rule 51 does not apply. Nor did Father challenge temporary custody at the IDH, where he made his first appearance in the case. Because Father expressly waived review of temporary custody at the IDH, we need not consider whether Rule 51 applies solely to a challenge made at the PPH — as the text of Rule 51 provides — or whether it applies more broadly to the hearing at which a parent first appears after service is completed.

¶18        Father's failure to avail himself of Rule 51 does not mean he is unable to challenge temporary custody. A parent may still request return of a child "[a]t any time after the temporary custody hearing" pursuant to Rule 59. Rule 59 directs the juvenile court to set an evidentiary hearing on the motion within thirty days. Ariz. R.P. Juv. Ct. 59(B). At that hearing, the court may return the child to the parent if it finds by a preponderance of the evidence that it would not create a substantial risk of harm to the child's physical, mental, or emotional health or safety. Ariz. R.P. Juv. Ct. 59(E)(1);

*see also* A.R.S. § 8-861. This procedure was available for disposition of Father's motion, and the court erred in not following these procedures.

**¶19** Father suggests the application of these rules and statutes results in a manifest injustice. Not so. The focus at each stage of the temporary custody inquiry is whether there is a present need for out-of-home care. This focus is consistent with the directive that, at all stages of the removal and dependency proceedings, the paramount concern is the child's health and safety. *See* Ariz. R.P. Juv. Ct. 36 ("The rules [of procedure for the juvenile court] should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child."), 47.1(A) ("If a child has been removed from the child's home by the state authority, the court shall make protecting the child from abuse or neglect the first priority."); *accord* A.R.S. §§ 8-821(E), -824(E)(9), -829(A), -843(A), -845(B); *see also Ariz. Dep't of Econ. Sec. v. Lee ex rel. Cty. of Maricopa*, 228 Ariz. 150, 155, ¶ 23 (App. 2011) ("The clear purpose of the governing statutes and Rules demands that, in dependency cases, if a child is held in temporary custody, all other considerations become subordinate to the child's health and safety."). "When a state expresses such an interest through particular legislation, its policy judgments are entitled to judicial deference." *Lee*, 228 Ariz. at 153, ¶ 13 (quoting *Diana H. v. Rubin*, 217 Ariz. 131, 136, ¶ 23 (App. 2007)). We cannot interpret the rules and statutes in a way that permits the court to ignore presently known facts that justify continued out-of-home care and remain true to the principle of treating the child's welfare as paramount. *See id.* at 155, ¶ 23 (concluding DCS's non-compliance with statutory directives did not justify placing a child's health and safety at risk) (citing *Hays v. Gama*, 205 Ariz. 99, 102-03, ¶ 18 (2003)). For this additional reason, the juvenile court erred in focusing solely upon the facial sufficiency of the electronic application and sworn declaration to support the by-then defunct *ex parte* temporary custody order, and erred by declining to hear any evidence or testimony regarding Father's present willingness or ability to care for them, particularly in light of DCS's avowals within the dependency petition and at the hearing that Father had been neglecting the Children and was unable or unwilling to provide them a safe home.

## CONCLUSION

**¶20** We accept jurisdiction and grant relief. The applicable rules and statutes provide a mechanism for review of the propriety of ongoing temporary custody through Rules 47.1 (mandating a review and judicial determination that out-of-home care is necessary at the court's first order approving the removal of a child), 50 (governing the PPH), 51 (governing

challenges to the temporary custody order), and 59 (governing motions to return the child to a parent). Each rule requires the juvenile court to act quickly, provides the parent with a reasonable opportunity to present argument and evidence in support of his position, and represents a careful balance between the competing interests of protecting a child's health and welfare and a parent's right to custody and control.

**¶21** The juvenile court did not follow the prescribed procedures, and its order striking the original *ex parte* order authorizing DCS to take temporary custody of the Children is vacated. This Court's order staying execution of that order is now moot. The case is remanded for further proceedings consistent with this Opinion.

